Peter D. Richardson

*v.*

Mary J. Eveland *et al.*

*Filed at Springfield September 27, 1888.*

1. Wills—*devise subject to a charge—to whom the surplus or residue inures.* If there be a grant or devise of the beneficial interest in lands, charged with the payment of debts or legacies, and not upon express trust to pay the same, the grantee or devisee is entitled to the surplus remaining after satisfaction of the debts and legacies charged, and if the charge fails, the advantage accruing from such failure will inure to his benefit.

2. Same—*of an ademption of a legacy — substitution of subsequent gift—evidence—presumption.* In determining whether an ademption of a legacy has taken place, it is important to observe whether the donor stands in the place of a parent, or as a stranger, to the donee, and also whether there are words accompanying the subsequent gift sufficiently express to show an intention on the part of the donor that the latter benefit shall be in substitution of the former.

3. In case the legacy is to a stranger, the intention of the testator to satisfy it by a subsequent gift (unless the legacy and gift be given for the same specific purpose,) must be expressed; but if the relation of the donor be that of parent, the presumption at once arises that the subsequent gift, if *ejusdem generis,* was intended to be in satisfaction of the prior legacy.

4. If a legacy is given by a parent, or one standing *in loco parentis,* and the testator afterward makes an advancement or gift of money or property *ejusdem generis,* to the same beneficiary, the presumption will arise that the gift was intended in satisfaction of or substitution for the prior legacy; and unless this presumption be rebutted, the ademption,

in full, or *pro tanto,* as the gift is equal to or less than the prior benefit, will take place.

5. But this equitable rule resting upon a presumption of the intention of the donor, extrinsic evidence is admissible to aid or rebut the presumption. Such evidence will relate only to the subsequent gift from which the ademption is claimed. The provisions of the will itself can not be varied or explained by parol evidence, although, when the intention of the testator is not clear, extrinsic evidence is often received to enable the court to read the will from the same standpoint of the testator.

6. Where a gift to a legatee is unaccompanied by any written instrument, the declarations and conduct of the testator in respect of the subject matter, and in breaking in upon the portions as fixed by his will, from which an inference of his intention in making the gift can be logically drawn, are competent to be considered, whether contemporaneous with or prior or subsequent to the gift.

7. Where a testator devised certain of his lands to his son, subject to a charge of $5000 to be paid to his daughters, and the testator afterward sold a part of the lands devised to the son and used the proceeds in making a gift to the daughters, this may be considered, on the question of his intention in making such gift, as whether he intended the gift in satisfaction of the charge in favor of his daughters.

8. In this case, a testator owning between four and five hundred acres of land, devised to his son one hundred and ninety acres thereof, subject to the payment of the sum of $5000 to the testator's seven daughters, and then devised the sum so charged, with the residue of his estate, real and personal, to the daughters. Afterward, the testator conveyed a part of the same and other lands to the son, a part of which was stated in the deed to be subject to the charges and conditions named in the will, and still later, sold to a third party one of the tracts devised to the son, for $5600, and he then gave to each of his daughters $2500 and to the son $10, unaccompanied with any declaration or statement of his intent in so doing: *Held,* that the payment to the daughters was not to be taken as an ademption or satisfaction of the legacy of $5000 to the daughters, and that the son was bound to pay that sum to his sisters.

9. CHANCERY—*practice—incompetent evidence.* A reversal of a decree in a chancery suit will not be had because incompetent evidence may have been heard, if there is in the record sufficient competent evidence to sustain the decree. It will, in such case, be presumed that the chancellor considered only such evidence as was proper.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. BROWN & KIRBY, for the appellant:

The gift of Mr. Richardson of $2500 to each of his daughters, on April 13, 1882, operated as an ademption of the special bequest in his will. 1 Pomeroy's Eq. Jur. secs. 524, 553, 557; Story's Eq. Jur. secs. 1109, 1111.

The codicil to the will does not re-establish particular bequests which have been adeemed. 1 Pomeroy's Eq. Jur. sec. 561; *Powys* v. *Mansfield,* 3 M. & C. 359; *Payne* v. *Parsons,* 4 Pick. 413; *Landon* v. *Astor's Exr.* 16 N. Y. 9.

Messrs. MORRISON & WHITLOCK, for the appellees:

Ademption of a legacy is a matter of intention. 1 Roper on Legacies, 365; 2 Story's Eq. Jur. sec. 114, note 1; *Powys* v. *Mansfield,* 3 M. & C. 359; *Langdon* v. *Astor's Exr.* 16 N. Y. 9.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

It is contended by appellant that the gift or advancement made by the testator, of $2500 to each of his daughters, on the occasion of the family reunion in celebration of his sixty-eighth birthday, was an ademption of the devise of $5000 to said daughters, jointly, made by the will a charge upon the land devised to appellant, to be paid by him to said daughters within one year after the testator's death.

At the date of the will (August 5, 1875,) the testator owned between four and five hundred acres of land, and a considerable personal estate. The devise to his son (appellant) was of real estate only, and was described in the will as the "home farm, consisting of one hundred and ninety-eight acres," and being "thirty-eight acres off of the south end of the east half of the S. E. Qr. of section 28; the east half of the N. E. Qr. of sec. 33; and the *west half of the N. E. Qr. of sec. 34,* all in township 15 N., R. 11, W. of the third principal meridian." The devise was subject to the following charge, viz: An annuity of $500 to be paid by the son to the widow of the testator during her life, and the payment of $5000 by the devisee

(the son) to the daughters of the testator within one year after the testator's decease. The $5000 so charged in the devise to the son, together with the residue of the testator's estate, real and personal, was specifically devised to the seven daughters of the testator, and their descendants, in equal portions.

The devise of the testator's estate was to his children, and because of the relation in which they stood, there being an imperfect natural obligation resting upon the father to provide for his offspring, the share of each child, as fixed by the will, is denominated a child's portion. The portion of the son, as thus determined, was the one hundred and ninety-eighty acres of land described, subject to the payment of the charge thereon. And the one-seventh of all the residue of the testator's estate, real and personal, augmented by the sum of $5000 charged on the devise to the son, constituted the portion of each daughter.

As will be observed, the tracts of land devised to the son are not contiguous, the eighty acres on section 34 being a half mile east of the tract on section 33, and separated therefrom by the north-west quarter of section 34, also owned by the testator. It is suggested that a mistake was made in the will, and that the west half of the north-west quarter of section 34 was intended, instead of the west half of the north-east quarter of section 34, and that the conveyance of that eighty acre tract, April 7, 1879, was intended to correct such mistake. There is here no latent ambiguity. Either tract, with the other lands devised, would make one hundred and ninety-eight acres, and was part of the home farm of the testator. This fact is therefore of no significance, except so far as it tends to illustrate the subsequent transactions. However, on the 7th of April, 1879, the testator, for the expressed consideration of $9920, conveyed to his son said west half of said north-west quarter of said section 34, and also forty-three rods and eleven links off of the west side of the east half of the same quarter section, and seventy-six rods off of the south end of the east half of the south-east quarter of said section 28, the

last mentioned tract being one of the pieces of land devised to the son.

On the 8th of March, 1882, the testator, apparently having determined to administer upon his estate himself, so far as it consisted of real estate, conveyed all his land. To his son, for the expressed consideration of $12,400, he conveyed, by deed of general warranty, the east half of the north-east quarter of section 33, (being one of the tracts devised to the son,) and seventy-six rods off of the south end of the west-half of the south-east quarter of said section 28, (excepting family grave-yard,) which deed contains the following express stipulation: "All the foregoing described premises being subject to the condition and charges upon the premises, as specified in the last will and testament of said William Richardson,—said will dated August 5, 1875." There then follows other lands · conveyed, not, however, subject to such charge. On the same day the testator sold and conveyed the residue of his lands to one Lazenby, including the said west-half of the north-east quarter of section 34, appearing by the will to be devised to the son. It is apparent that all of said land conveyed to the son was a gift by his father, except, perhaps, the forty-three acres off of the west side of the east half of the north-west quarter of section 34, which the son is shown to have claimed that he paid for.

On the 13th of April, 1882, a month and five days after the several conveyances, on the occasion before referred to, the testator gave to each of his daughters $2500, and to his son $10, using in making such gift, in part, the proceeds of the land sold to Lazenby, among which, as we have seen, was eighty acres (the west half of the north-east quarter of section 34,) devised to appellant. These gifts were made by placing the amounts in an envelope, and handing the same to the several beneficiaries, and were unaccompanied by any statement, oral or written, expressive of the intent of the donor in making the same.

It is insisted that by the sale to Lazenby, and the use of the proceeds of the eighty-acre tract last mentioned, real estate of the value of more than $5000 "was taken from the devise to Peter, (appellant,) and its identical proceeds were handed over to the daughters" by the testator, and that it must be presumed that the legacy of $5000 charged on the land of appellant was intended to be satisfied.

The deed to appellant of March 8, 1882, adopts and recognizes the will of the grantor as determining the charge and condition upon which the conveyance of the two tracts first named therein was made, and appellant, having acquired title thereunder, took the title subject to the charge. By reference to the will, it is seen that part of this charge and condition was the payment by appellant of the legacy of $5000 to the daughters, within one year after the testator's death. No extended discussion of the contention of appellees' counsel, that the sum charged upon the land must, in any event, be paid by appellant, and if adeemed, would go to swell the residuum of the estate, is required, as the cause must at last, on other grounds, be determined in their favor. But it may be said, the will remaining ambulatory, a subsequent gift or advancement by the testator to the legatees, with the intention that it should be in lieu and discharge of the legacy, would be an ademption thereof, and in such case the particular legacy adeemed would, as it is said, be removed or taken away by the act of the testator, (1 Pomeroy's Eq. 554,) and the testamentary gift, having been anticipated and discharged, would stand in the will as a satisfied legacy, forming no part of the will to be carried into execution. Here, this particular provision for the daughters was, by the will, raised out of and made a charge upon the land, and it is manifest that upon ademption thereof the charge would be gone. Moreover, the gift by the father to the son was of the beneficial interest in these lands, subject to the legacy of $5000 to the daughters, and while he took the land *cum onere*, the doctrine is, that if there be a grant or

devise of the beneficial interest in lands charged with the payment of debts or legacies, and not upon express trust to pay the same, the grantee or devisee is entitled to the surplus remaining after discharging the debts and legacies charged, and if the charge fails, the advantage accruing from such failure will inure to his benefit. 1 Roper on Legacies, chap. 9, secs. 1, 12,—sec. 1, and cases cited.

In determining whether an ademption has taken place, or the doctrine applicable, it is always important to observe whether the donor stands in the place of a parent, or as a stranger to the donee, and also if there are words accompanying the subsequent gift sufficiently express to show an intention on the part of the donor that the latter benefit should be in substitution of the former. In case the legacy is to a stranger, the intention of the testator to satisfy the legacy by a subsequent gift,—unless the legacy and gift be given for the same specific purpose,—must be expressed. The question there arises upon construction of the express words of the donor, unaided by any presumption in favor of the satisfaction of the prior legacy. If the relation of the donor be that of parent, the presumption at once arises that the subsequent gift, if *ejusdem generis*, was intended to be in satisfaction of the prior legacy. The rule is based upon the equitable presumption that a parent, or one standing *in loco parentis*, and owing a like natural duty to all of his children, would not, after having voluntarily established the portion each should receive of his estate, take from one to his detriment, for the purpose of benefiting another. The natural obligation of the parent to provide for his offspring is an imperfect obligation, and the portion of each child remains wholly under the control of the testator, and may be changed at his pleasure. The rule is based upon the presumed intention of the testator, where he owes a like common obligation to all, not to give one of the objects of his bounty a double portion of his estate to the injury of the others. The rule was created by courts of equity

on account of their leaning, as it is said, against double portions, and to facilitate the equitable distribution of estates. (*Suisse* v. *Lowther*, 2 Hare, 424; 1 Pomeroy's Eq. 554; Roper on Legacies, *supra*.) Hence, if a legacy be given by a parent, or one standing *in loco parentis*, and the testator afterwards makes an advancement, or gift, or money, or property *ejusdem generis*, to the same beneficiary, the presumption will arise that the gift was intended in satisfaction of or substitution for the prior legacy, and unless this presumption be rebutted, an ademption in full, or *pro tanto*, as the gift is equal to or less than the prior benefit, will take place. When the equitable presumption arises, and the rule applies, the ademption, in whole or in part, is complete by the act of the donor in conferring the two benefits, from which the intention of substitution is implied. But the rule resting upon a presumption of a fact,—that is, the intention of the testator or donor,—extrinsic evidence is admissible to aid or rebut the presumption. Mr. Pomeroy quotes approvingly Lord ROMILY, M. R., as saying in *Cooper* v. *Cooper*, L. R. 8 Ch. 813: "If the testator stands *in loco parentis*, the presumption of equity being against double portions, the presumption of satisfaction arises at once, and includes everything that the father gives which he intended to be in satisfaction of his previous promised benefits, and evidence is admissible for the purpose of rebutting or sustaining the presumption against double portions, which, in that case, is in favor of satisfaction." It is manifest that such evidence will relate only to the subsequent gift by reason of which, it is alleged, the ademption has taken place. The provisions of the will can not be varied or explained by parol, although where the intention of the testator is not clear, extrinsic evidence is frequently admissible, to enable the court to read the will from the standpoint of the testator. Wigram on Wills, (2d Am. ed.) 161. Where, as here, the gift is unaccompanied by any written instrument, the declarations and conduct of the testator in respect of the subject matter being

considered, and in breaking in upon the portions as fixed by his will, from which an inference of his intention in making the gift can be logically and legitimately drawn, are competent to be considered, whether cotemporaneous with or prior or subsequent to the gift. (*Richards* v. *Humphreys*, 15 Pick. 133; *Howz* v. *Mallet*, 4 Jones' Eq. 194; 1 Pomeroy's Eq. 564.) In respect to the measure of proof required to rebut the presumption, it will be sufficient if it satisfactorily appear that the testator intended the legacy to be subsisting, or so considered it, notwithstanding the subsequent advance. 1 Roper, *supra.*

It was entirely proper for appellant to show, and for the court to consider, as tending to sustain the presumption of satisfaction, that a portion of the land devised to the son had been sold to Lazenby, and the proceeds thereof used by the testator in making the gift to the daughters, so far as it tended to illustrate the intention of the testator in making said advance. However, looking into the dealings of the testator in respect of his estate, and its distribution among his children, who alone are the objects of his bounty, it is seen that in lieu of the eighty-acre tract taken from the devise to the son, there had been taken from the devise to the daughters a much larger amount of land, both in quantity and value, which was given to the son. By the deed of April 7, the west half of the northwest quarter of section 34, and another tract devised to the daughters, of equal value, so far as we can see, with the tract sold to Lazenby out of the devise to the son, was given to the son. Thereby he was given a tract of equal value, though the value, perhaps, is not important, and permitted to enter into the enjoyment thereof without being postponed until the death of his father. It must be remembered that the fact to be ascertained, was the intention with which the gift to the daughters was made. The right of the donor to substitute one tract for another is not questioned. There can be no question that on the 8th of March, 1882, when the testator, as parts of the same transaction, conveyed the residue of the land devised to

the son, and other tracts of land, to him, and conveyed the eighty-acre tract mentioned, with other lands, to Lazenby, he intended the legacies to the daughters to continue a subsisting charge upon that portion of the land against which the bill in this case seeks to enforce the same. In the most solemn manner, he expressly stipulated in his deed that the son should take the land subject to that charge. It is beyond controversy that he then had no intention that his conveyance of the land to Lazenby should in any way affect the charge upon the land to the son. He had given, and was then giving, to the son, as a largess, substantially a hundred acres more land than he would have derived under the will; and it is not unreasonable, in view of the facts, that the charge in favor of the daughters should be retained. It is said that the particular tract originally included in the devise to the son was worth over $5000, but it is equally apparent that the testator had taken from the devise to the daughters a much larger amount of land, and given it to the son. Nothing occurred in the month intervening between this transaction and the gift to the daughters, that would tend, in any degree, to show a change of intention on the part of the testator; and it is apparent that in the general plan adopted by the testator for the distribution of his estate by himself, he regarded the proceeds of the land sold to Lazenby as belonging to the daughters, for which he had made ample provision and compensation by taking from their shares for the benefit of the son. That this was so understood, seems apparent. When the will was opened, and it was found that there was a devise of the west half of the north-east quarter of section 34, to the son, he said, in substance, that it was a mistake,—that he had got all the land his father intended him to have. We think, giving full effect to the equitable presumption before considered, that the circumstances proved satisfactorily and effectually rebut the presumption of the intention of satisfaction, and that the $5000 legacy to the daughters

remained and is a subsisting charge upon the land, and that the rule contended for has therefore no application.

Again, the rule sought to be invoked by appellant is based upon the presumption against double portions, and can not be invoked to create a double portion. It will not be presumed that the testator intended to give one of the objects of his bounty, where he owed a like obligation to all, a double portion. If, then, the application of the rule would produce the effect it is intended to prevent,—that is, diminish the proportion of the daughters and give the son a double portion,—the court will not apply it. As we have seen, the effect of the application of the rule in this case would be to give to the son of the testator the $5000 devised to the daughters, after he had received the full amount of the portion intended to be bestowed by the common donor. This would be a subversion of the rule, and lead to the result which its adoption was intended to prevent.

It is also objected that the court admitted incompetent evidence. Without pausing to discuss the relevancy or competency of all the evidence adduced and admitted, it is sufficient to say that a reversal will not be had because incompetent evidence may have been heard in chancery causes, if there is in the record sufficient competent evidence to sustain the decree. The presumption is that the chancellor considered only such evidence as was proper under the issues.

The decree of the circuit court is, in our judgment, fully warranted, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*