**In re Estate of Henry E. Pridmore, Deceased.**

**Emily M. Pridmore and Henry A. Pridmore, Appellants, v. Emily M. Pridmore and Dora C. Snow, Executrices, Appellees.**

**Gen. No. 19,244.**

1. WILLS, § 455*—*when ademption depends on intention of testator.* Whether a sum furnished by a testator in his lifetime to a legatee for the purchase and construction of a home for the latter should be *held* as lessening *pro tanto* the amount which he should

---

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

receive as residuary legatee depends upon the intentions of the testator irrespective of any presumption of law that can arise in the case.

2. WILLS, § 455*—*when intention to make an ademption not presumed.* The intention of a testator to make an ademption should not be presumed in the face of any reasonable evidence to the contrary.

3. TRIAL, § 293*—*when submission of propositions of law not proper.* A proceeding in the Circuit Court on appeal from a judgment in the Probate Court involving the question whether a sum paid by the testator was an advancement, gift or ademption is in the nature of a chancery suit in which the submission of propositions of law is neither necessary nor proper.

Appeal from the Circuit Court of Cook County; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed June 15, 1914. Rehearing denied June 29, 1914. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** Henry E. Pridmore died in Glasgow, Scotland, September 25, 1908, while on a visit to that country which began in July, 1908. He was a resident of Chicago, where he had an extensive and profitable business in the manufacture of molding machines. For ten years prior to his death Miss Dora C. Snow was employed by him and at the time of his death she was his office manager. He left surviving him a widow, Emily M. Pridmore, and four sons, Edward A. Pridmore, the oldest, Henry A. Pridmore, the second, the two others who were minors at his death. His will was duly probated in the Probate Court. of Cook county November 16, 1908. It was dated August 27, 1900. It devised a homestead, furniture and horses, etc., to his wife, Emily M. Pridmore, and then all the rest of his property to his wife, Emily M. Pridmore, and "his friends," Cyrus H. McCormick and Dora C. Snow in trust (a) to pay Emily M. Pridmore $200 a month; (b) to pay each of his children during their minority $500 per year in quarterly payments to be made to their guardian. (The will later named their mother, Emily M. Pridmore, as

*See **Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly,** same topic and section number.

CHICAGO—FIRST DISTRICT—JUNE, 1914.    303

guardian.)   (c) To give each of his children $500 per year after his minority in case he desired a collegiate education; (d) to continue the testator's manufacturing business and pay out of the income the legacies heretofore mentioned until the youngest child should be twenty-one years old; (e) when his youngest child had attained the age of twenty-one years to turn over to his wife, Emily M. Pridmore, and his children the business and all property of every description connected therewith. "My said wife to have a one-third interest therein and my said children to have equal interests in two-thirds thereof."

The will further provided that the trustees should have power to sell real estate and invest the proceeds, and distribute them when the youngest child was twenty-one years old-one-third to his wife and two-thirds to his children, share and share alike. In case of the death of any of his children leaving child or children surviving, such child or children should take the parent's share, and in case of the death of any child without issue his share should go to the survivors share and share alike.

Other clauses of the will expressed a wish that as soon as any of his sons arrived at a suitable age he should be employed in the business by the trustees, requested that the trustees pay his father an annual income from the profits of the business, provided for a compensation to the trustees of one and one half per cent. of the net profits of the business, and appointed Emily M. Pridmore guardian of such children as might be minors at the time of his death, and Emily M. Pridmore, Cyrus H. McCormick and Dora C. Snow executors without bond. Mr. McCormick declined to act as executor.

After the will was admitted to probate the widow, Emily M. Pridmore, renounced the provisions for her benefit and elected to take under the statute. This made necessary a sale of the business under the order of the Probate Court, in order that the widow's stat-

utory share might be set off to her. Emily M. Pridmore, the widow, and Henry A. Pridmore, the second son, bid in the plant and property connected with the business and continued to run it. Edward A. Pridmore, the eldest son, was a rival bidder, and after his mother and brother became the purchasers he secured the incorporation of another company for the same business, of which he and Dora C. Snow became employes and managers. Litigation and consequent family estrangement grew up. Emily M. Pridmore and Dora C. Snow, as executrices of the last will and testament of Henry E. Pridmore, each inventoried $6,645.05 as an account receivable by the estate from Edward A. Pridmore, this being a sum which appeared in the business ledger of Henry A. Pridmore as the balance on the debit side of an account called the E. A. Pridmore account at the time of the death of Henry E. Pridmore. The executrices, because they could not agree on some items, filed separate inventories. When in June, 1911, the executrices presented their final account preliminary to their discharge, this $6,645.05 (not having been collected) gave rise to a question and discussions thereon which have resulted in this appeal. The question was in effect whether the sum had been properly inventoried as a part of the estate and should be charged against Edward A. Pridmore either as an advancement on the share of the estate coming to him, or as a debt due from him, or whether it was a gift from Henry E. Pridmore to his son and should therefore, because it was debited to the executrices by the inventory, be credited on the final account by a countercharge.

The Probate Court held, after a hearing of evidence and argument, that the amount was a gift and not an advancement, and accordingly the final account as originally drawn was amended by inserting on the credit side thereof this entry:

"Amount shown in respective inventories as an advancement to Edward A. Pridmore and as an account

receivable, decided by this Honorable Court on June 28, 1911 (upon the objections of Emily M. Pridmore to the current and final account of Dora C. Snow, executrix) to have been a gift and now credited by the executrices, pursuant to such decision of the Court, without prejudice, however, to the right of Emily M. Pridmore to appeal from the decision of said Court upon her objection to the allowance of this item.....$6,645.05.''

The court then approved the final amended account, and reciting that the estate had been properly administered and distributed, with the exception of $2,215, retained by the executrices pending an appeal by the widow and one of the heirs at law of said decedent from the order of the court heretofore entered authorizing said executrices to credit themselves with the sum of $6,645.05 in their final account, which the court held to be a gift to Edward A. Pridmore in his lifetime, approved said report and declared the estate settled and ordered that the said executrices should be discharged upon the final disposition of said appeal and the lawful distribution of the sum so retained.

Emily M. Pridmore and Henry A. Pridmore objected to the said allowance of a credit on the executrices' account of $6,645.05, and, on the objection being overruled, excepted and prayed an appeal to the Circuit Court of Cook county "from the judgment and order allowing said item." The appeal was allowed and was in October, 1912, heard by the Circuit Court without a jury, on which hearing the Circuit Court found:

"That the money paid out by the testator Henry E. Pridmore for the benefit of his son Edward A. Pridmore was a gift by said decedent to said Edward A. Pridmore and that it was not the intention of said decedent to charge said sum specifically to said son and that an ademption of the legacy to said sum on account thereof should not be allowed," *and ordered* "that said executrices credit themselves with the amount of said item of $6,645.05  *  *  *  as they have done in said amended final account, and that said amended final account be  *  *  *  approved."

From this order of the Circuit Court, Emily M. Pridmore and Henry A. Pridmore have appealed to this Court.

CHARLES HENRY DUMMER and HERMAN W. STILLMAN for appellants.

HOLDOM, MANIERRE & PRATT, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

We have read and considered with great interest and much care the elaborate and exhaustive arguments with which counsel have assisted the court in this case. But it would be a needless labor to analyze in our opinion the many cases of high authority which have been cited to us on each side of the controversy.

The question itself is a simple one. It is whether the sum—between six and seven thousand dollars, out of an estate approximating half a million—which Henry E. Pridmore in his lifetime furnished to his son Edward A. Pridmore for the purchase and construction of a home for him, should be held as lessening *pro tanto* the amount which as a residuary devisee Edward A. is to receive from his father's estate. That again resolves itself into the question— What was the intention of Henry E. Pridmore when he furnished this money to provide a home for his first and only married son?

Three intentions were possible, and, irrespective of any presumption, if either intention is established by the evidence it must prevail. In other words, there is no conclusive presumption of law that can arise in the case. Evidence of intention will overcome any technical rules concerning ''portions,'' or ''unsatisfactions,'' which, as Lord Chancellor Cottenham in 1841, in *Pym v. Lockyer*, 5 Mylne & Craig, 27, said, were ''all intended to ascertain and to work out the intention of the giver.'' As he said also: ''All the deci-

Pridmore et al. v. Pridmore et al., 187 Ill. App. 301.

sions upon questions of double portions depend upon the declared or presumed intention of the donor.''

This supremacy of external evidence of intention over the presumption which, in the absence of such evidence the law recognizes, is shown to be the sound doctrine in such cases as *Trimmer v. Bayne,* 7 Vesey, Jr. (1802); *In re Lacon,* 2 ch. Div. (1891); and *Carmichael v. Lathrop,* 108 Mich. 473, cited and relied on by the appellants, as well as in many others. It has been declared by the Supreme Court of this State in *Richardson v. Eveland,* 126 Ill. 37. In the case at bar the money furnished for Edward A. Pridmore's home by his father might have been intended (a) as a gift; (b) as a loan; (c) as a *pro tanto* ''ademption'' or, more properly, ''satisfaction'' of a residuary bequest.

Evidence both oral and written was presented on the hearing of this case before the Probate Court and in the trial *de novo* on the appeal to the Circuit Court on the question of which of these intentions existed. The written evidence was that of account books of the business of Henry E. Pridmore kept by or under the charge and supervision of the principal witness for the appellees, and the inventory of the estate made by that witness. So far as it went it may be considered as supporting the theory that the money was furnished as a loan. But as explained by the testimony of Miss Snow this written evidence amounted to very little, while her oral testimony was of great importance. That oral testimony was not contradicted—perhaps in the nature of things could not be—but it is argued that it is to be viewed with suspicion. Its credibility was passed upon favorably by the judge of the Probate Court and by the judge in the Circuit Court, and we do not see justification in the arguments that are made to us for refusing it credence here. It establishes, if true, by statements of the testator made not in answer ''to impertinent inquiries, drawing angry answers,'' as in *Trimmer v. Bayne, supra,* but to a person who apparently had his full confidence in the management of his

business and pecuniary affairs, that the money which bought the lot and built the house was a gift to his son by the testator as fully as the $1,000 for furniture or the $435 for a cemetery lot, of which a different form of memorandum was made.

We think there is no reason in the face of this evidence to fall back on the rule of presumptions and the exceptions thereto laid down by authority as to "ademptions" and *pro tanto* satisfactions.

It is quite true, as pointed out by the appellants' argument, that the provision of our statute of descent, that "no gift or grant shall be deemed to have been made in advancement unless so expressed in writing or charged in writing by the intestate as an advancement or acknowledged in writing by the child or other descendant," has nothing to do with the settlement of an estate under a will, and consequently has no effect whatever directly on the present case; but it is not without interest to note that it seems to throw some light on the policy of our law in relation to its care of a decedent's intentions and to justify the inference that the intention of a testator to make an ademption should not be presumed in the face of any reasonable evidence to the contrary.

Complaint is made that the court refused to pass on propositions of law. The Supreme Court expressly decides in *Tanton v. Keller*, 167 Ill. 144, that a proceeding like this is in the nature of a chancery suit, where no propositions of law are necessary or proper.

The order of the Circuit Court appealed from is affirmed.

*Affirmed.*