# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Koulogeorge v. Campbell*, 2012 IL App (1st) 112812

---

| | |
|---|---|
| Appellate Court Caption | EMILY KOULOGEORGE, CHARLES D. HUNTER, AND WILLIAM O'SHANK, as Trustees of the Charles Rudolph Walgreen, Jr., Declaration of Trust, Dated November 6, 1979, as Restated September 8, 1999, Plaintiffs and Counterdefendants, v. ROBERT CAMPBELL, CHARLES R. WALGREEN III, LESLIE ANN WALGREEN PRATT, JAMES ALAN WALGREEN, ROTARY/ONE FOUNDATION, INC., AND ROTARY FOUNDATION OF ROTARY INTERNATIONAL, *et al.*, Defendants (Charles R. Walgreen III, Leslie Ann Walgreen Pratt, and James Alan Walgreen, Counterplaintiffs and Cross-plaintiffs and Appellants; Rotary/One Foundation, Inc., and the Rotary Foundation of Rotary International, Cross-defendants and Appellees; and Emily Koulogeorge, Charles D. Hunter, and William O'Shank, as Trustees, Adler Planetarium, Dixon Historic Center, ENH Research Institute of Evanston Hospital, Evanston Northwestern Healthcare Corporation, International College of Surgeons, National Jewish Medical and Research Center, Rehabilitation Institute of Chicago, the Rotary Foundation of Rotary International, Rotary/One Foundation, Inc., TKE Educational Foundation, Inc., University of Michigan, Walgreen Benefit Fund, and Norman E. and Harriet S. Wymbs Foundation, Inc., Cross-defendants). |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-11-2812, 1-11-3321 cons. |
| Filed | December 31, 2012 |
| Rehearing denied | February 27, 2013 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

Plaintiffs failed to establish that decedent intended to adeem or revoke his bequest to defendants, even though decedent made similar gifts to defendants a short time before his death.

Decision Under Review

Appeal from the Circuit Court of Cook County, No. 2007-P-003435; the Hon. Mary Ellen Coghlan, Judge, presiding

Judgment

No. 1-11-2812, Affirmed.
No. 1-11-3321, Dismissed.

Counsel on Appeal

Richard D. Boonstra and John C. Lillig, both of Hoogendoorn & Talbot LLP, and Patrick E. Dwyer III, both of Chicago, for appellants.

Mark E. Shure, of Latimer LeVay Fyock LLC, of Chicago, for appellees.

Panel

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Pucinski and Epstein concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs-appellants, Charles R. Walgreen III, Leslie Ann Walgreen Pratt, and James Alan Walgreen (hereinafter, the Walgreen Beneficiaries), the children of the late Charles R. Walgreen, Jr., appeal from the circuit court orders denying their cross-motion for summary judgment and granting summary judgment in favor of defendants-appellees, Rotary/One Foundation, Inc., and the Rotary Foundation of Rotary International (hereinafter, collectively referred to as the Rotary Foundations). The center of the dispute concerns the proceeds of Walgreen's living trust. The Walgreen Beneficiaries contend the trial court erred in failing to examine evidence showing that the late Charles R. Walgreen intended to, and did in fact, adeem or revoke his bequest to the Rotary Foundations. They also contend the trial court erred in failing to consider the issue of attorney fees. For the reasons to follow, we affirm.

BACKGROUND

¶ 3    The record, together with the motions, complaints, and attached documents, reveals the following. Walgreen was a member of and/or contributor to the Rotary Foundations. It is undisputed that he made regular cash donations to Rotary International and, in 1997, Walgreen urged Rotary/One Foundation members to include the organization in their estate plans, as evidenced by a correspondence from Richard McKay, the cochairman of Rotary/One Foundation. It is also undisputed that on October 13, 1997, Walgreen became a member of "Rotary/One Foundation Legacy Award" program by "pledging a minimum bequest of $25,000 or more." Walgreen signed this form stating he had made arrangements to bequest 20,000 shares of Walgreen company common stock to Rotary/One Foundation.

¶ 4    Walgreen died in 2007, leaving behind a will that poured over into his living trust, of which the plaintiffs-appellants and the defendants-appellees are both beneficiaries. Walgreen amended the 1979 trust throughout his life, including three times in the 1980s, twice in the 1990s, and once in 2006. Relevant here, the record shows that on September 8, 1999, Walgreen restated his declaration of trust in its entirety. Regarding any future amendments, Walgreen stated under "Article Ten" of the trust that: "I may at any time or times during my lifetime by instrument in writing delivered to the trustee amend or revoke this declaration of trust in whole or in part. The trust property to which any revocation relates shall be conveyed to me or otherwise as I may direct. This power is personal to me and may not be exercised by my legal representative or others." In addition to restating his declaration of trust, Walgreen also amended the restatement that same day. The 1999 amendment at issue in this case stated in typewritten form:

> "Upon my death, the trustee shall distribute the number of shares of the common capital stock of Walgreen Co., an Illinois corporation, or any other asset, set forth before the distributee's name in the attached Exhibit A, which shall be handwritten or signed or initialed by me, to each person listed in that exhibit who is living at my death and to each institution listed in that exhibit which is in existence at my death. Exhibit A, as it exists at my death, shall be deemed to be an Amendment to the Declaration of Trust, accepted by me as trustee, if executed after the date of this amendment."

Walgreen signed the September 8, 1999, amendment, which was notarized. Attached to the amendment was "Exhibit A," a so-called "Beneficiary List," consisting of eight handwritten pages on lined paper delineating gifts of his personal property and stock to various people and some 33 institutions and organizations. The personal property gifts were decidedly of the personal variety, ranging from a "brass table lamp with a greenshade" and "cast iron kettle 19[-inch] diameter," designated for certain offspring. In terms of stock gifts, the list provided for the disposition of more than 900,000 shares of stock in Walgreen's company. Of singular importance to this appeal, Walgreen designated that "the Foundation of Rotary/One Club" was to receive 10,000 shares, and Rotary International Foundation was to receive 10,000 shares, with half that amount to go toward "the Polio Plus campaign to immunize the children of the World."

¶ 5    Allegedly, after Walgreen executed the aforementioned typewritten portion of the 1999 amendment, he presented his trustee and financial advisor Emily Koulogeorge with a sealed

envelope containing the handwritten Beneficiary List. He allegedly stated he wanted the contents to remain a secret until his death and directed Koulogeorge to place the sealed envelope in a fireproof cabinet at his Walgreen company headquarters. She complied.

¶ 6     In the fall of 1999, according to a tax-return attachment, Walgreen made "charitable contributions" of stock to 15 institutions, including the University of Michigan (120,000 shares), Adler Planetarium (10,000 shares), and the International Museum of Surgical Sciences (5,000 shares). Included in that list were the Rotary Foundations, with 10,000 shares going to Rotary International on September 15, and 10,000 shares going to Rotary/One on October 4. Although Walgreen gave the Rotary Foundations the same number of shares in 1999 that were set forth in the Beneficiary List, the amounts he gave other institutions varied. For example, in the Beneficiary List, Walgreen designated that Adler Planetarium was to receive 6,000 shares as a bequest, but the tax-return document reflects a donation of 10,000 shares. On the other hand, under the Beneficiary List, the Museum of Surgical Science was to receive 10,000 shares, but the tax-return document reflects a gift of 5,000 shares in 1999. Almost all of the institutions in the tax-return document were also identified in the Beneficiary List, with the exception of four (Northland College, North Dakota State University, the University of Illinois, and the National Defense Fund).

¶ 7     Shortly after the shares were dispensed to the Rotary Foundation of Rotary International in 1999, Karen LaChapelle, the gift administration supervisor for the Foundation, wrote Walgreen thanking him for his September 16 gift of 10,000 shares to the Foundation (valued at $250,000) and assured him that, pursuant to his request, half that amount would be devoted to the Polio Plus campaign. Other letters from the fall of 1999 reflect that Walgreen presented "pre-bequest" donations, "prepayment on my bequest," or "advance payment" of Walgreen company shares in his trust to the National Jewish Medical Foundation, the Rehabilitation Institute of Chicago, and the Tau Kappa Epsilon Foundation. Correspondence between Walgreen and the University of Michigan reveals that Walgreen did the same throughout the 1990s by presenting the university with various "advances" from his trust bequest. The parties do not now dispute that, under the doctrine of ademption, these letters suggest Walgreen intended to revoke gifts identified in his trust to the National Jewish Medical Foundation, the Rehabilitation Institute of Chicago, the Tau Kappa Epsilon Foundation, and University of Michigan, by giving these institutions Walgreen shares during his lifetime. *Ruby v. Ruby*, 2012 IL App (1st) 103210, ¶ 16 (defining ademption).

¶ 8     In September 2000, Walgreen apparently suffered a stroke. On December 6, 2001, Walgreen's attorney Joseph Foster, per Foster's deposition testimony, attended a meeting with the 95-year-old Walgreen at the company headquarters, where Walgreen unveiled the 1999 trust amendment. Once there, Walgreen, who was in a wheelchair at his desk, requested that Koulogeorge secure the aforementioned sealed envelope from the fireproof safe. After she did so, Walgreen directed her to wait outside with another trustee while, from behind closed doors, Foster and Walgreen discussed the contents of the envelope, which included the two-page, typewritten "Trust Amendment," dated September 8, 1999, and the eight-page handwritten Beneficiary List, serving as Exhibit A. Foster testified the trust amendment amended "the distributive provisions for the beneficiaries named in [Walgreen's] longhand [in] Exhibit A." Foster read aloud the bequests identified in Exhibit A line by line and asked

Walgreen if the document correctly identified what he wished to distribute on his death, whether it was Walgreen's signature on every page, and whether the document truly reflected Walgreen's intentions. Walgreen answered these questions in the affirmative. Foster testified that the Beneficiary List thus reflected the desired disposition of the Walgreen company stock.

¶ 9 Walgreen passed away on February 10, 2007, at the age of 100. Although several different versions of the handwritten Beneficiary List surfaced following Walgreen's death, the parties have agreed that Exhibit I is the "effective amendment" to the trust. Furthermore, although the parties did not necessarily agree below, they now agree that at the time of Walgreen's death, he owned 930,483 shares of Walgreen company stock. The parties also now agree that the total shares set forth in the Beneficiary List equaled 933,658, assuming the entities and individuals were existing at the time of Walgreen's death. This, they say, created a shortfall of 3,175 shares.

¶ 10 Following Walgreen's death, the trustees filed a complaint for a declaratory judgment constructing the trust and naming some 100 individuals and entities with an alleged interest in the determination. In relevant part, the trustees sought declaration regarding the impact of any shortfall in Walgreen company shares of stock when Walgreen died. The trustees also requested that the court determine whether a one-page, undated document, handwritten in pencil on lined paper and listing some 35 institutions, accompanied by two columns of numbers (hereinafter the Charity List), was an effective amendment to the trust. The trustees alleged that the week before Walgreen died, one of his grandsons discovered the Charity List in Walgreen's filing cabinet at his residence. The words "Exhibit A" are printed upside down toward the bottom of the page. The organizations on the Charity List, and the sequence by which they are listed, largely reflect the Beneficiary List. In a column next to each organization on the Charity List is a number that reflects shares bequested to the organizations, with the exception of Shedd Aquarium and the University of Michigan; regarding those two organizations, the number listed and that bequested varies. In addition, most of the organizations that received stock contributions in 1999, as identified in the tax-return document, are listed on the Charity List, along with the shares given in a second column.

¶ 11 On January 28, 2009, noting that the trustees' complaint did not adequately advance their interests, the Walgreen Beneficiaries filed a counterclaim for declaratory relief and under the legal doctrine of ademption. The Walgreen Beneficiaries alleged that Walgreen's bequests to 11 organizations identified in the Beneficiary List, including the Rotary Foundations, should be revoked because, during his lifetime, Walgreen had presented these organizations with gifts intended to take the place of the bequests. The Walgreen Beneficiaries thus became cross-plaintiffs and the Rotary Foundations, cross-defendants. The Walgreen Beneficiaries argued the lifetime gifts created a latent ambiguity in the trust, requiring the examination of extrinsic evidence. The Walgreen Beneficiaries thus alleged these entities were receiving a "double benefit," creating a shortfall of available shares. In support of their ademption claim, the Walgreen Beneficiaries pointed to the Charity List, alleging that it represented a sort of "scorecard" Walgreen used to keep track of the shares he had given to the subject organizations during his lifetime. They also relied upon the aforementioned correspondence

wherein the organizations acknowledged the shares were a "prebequest" lifetime gift or an "advance payment" of the planned gift. This, they suggested, proved Walgreen's prebequest gifting pattern.

¶ 12    In count VI, the Walgreen Beneficiaries alleged that although the Beneficiary List directed that Rotary International receive 10,000 shares of Walgreen stock (with half going to the Polio Plus project), this bequest was adeemed by Walgreen's September 16, 1999, donation of 10,000 shares to the organization. The Walgreen Beneficiaries also averred that the September 23, 1999, letter to Walgreen from the Rotary International gift supervisor LaChapelle supported its allegations, since Walgreen's request that half the donation go to Polio Plus tracked the language of his bequest. In count XI, the Walgreen Beneficiaries alleged that although the September 8, 1999, Beneficiary List directed that Rotary/One receive 10,000 shares of Walgreen stock, this bequest was adeemed by Walgreen's October 4, 1999, donation of 10,000 shares to the organization. The Walgreen Beneficiaries, finally, requested reasonable attorney fees be chargeable against the fund or property in question.

¶ 13    Following settlement negotiations between the Walgreen Beneficiaries and 7 of the 11 charities, the trial court entered an agreed order on September 22, 2009, which was drafted by the Walgreen Beneficiaries with respect to the Walgreen trust. The parties stipulated three points relevant to this appeal–(1) that the Charity List was not an amendment to the trust and its "impact, if any," on the distribution of Walgreen stock from the trust was confined to the unresolved claims; (2) that following settlement with the University of Michigan, the Walgreen trust held sufficient stock to satisfy the bequests in the Beneficiary List and, "therefore, no shortfall exists"; and (3) that no beneficiary had a basis to claim attorney fees from the trust. The court declared that the order determined the rights of all parties regarding allegations in the trustees' complaint, except the remaining counterclaim counts of the Walgreen Beneficiaries, and then declared the order final for the purposes of appeal. The Rotary Foundations appealed the attorney fees issue, but ultimately dismissed the appeal in 2011. On March 9, 2010, the trial court entered an agreed order further granting the Walgreen Beneficiaries' motion for voluntary dismissal of the counterclaim as to the remaining organizations, with the exception of the Rotary Foundations. Thus, of the 11 organizations named in the counterclaim suit, the only remaining litigation involved the 2 Rotary organizations.

¶ 14    Following discovery, the Rotary Foundations and the Walgreen Beneficiaries filed cross-motions for summary judgment. The Rotary Foundations argued that the doctrine of ademption did not apply to trusts under Illinois law and that, even if it were to apply, there was no evidence that Walgreen intended to adeem the bequests identified in the Beneficiary List, in fact going so far as to argue that the evidence demonstrated Walgreen did *not* intend to adeem these bequests. In support, the Rotary Foundations pointed to the deposition testimony of Walgreen's attorney, Foster, which was attached to their motion for summary judgment.

¶ 15    The Walgreen Beneficiaries, on the other hand, argued that ademption applied to trusts and that the evidence demonstrated Walgreen intended to adeem his bequests to the Rotary Foundations by giving them the shares in 1999. In support of this argument, the Walgreen Beneficiaries pointed to the September 23, 1999, letter from LaChapelle to Walgreen,

wherein LaChapelle assured Walgreen that pursuant to his request half of the gift would be devoted to the Polio Plus campaign. Citing the Beneficiary List, where Walgreen made the same request regarding the Polio Plus program, the Walgreen Beneficiaries argued the letter raised a "presumption of ademption." The Walgreen Beneficiaries further argued that Walgreen's prebequest gifts to other charity organizations established the same intent with respect the Rotary Foundations. Finally, the Walgreen Beneficiaries pointed to an affidavit from Carol Gibson, of the National Jewish Medical & Research Center, attesting to a letter and internal memoranda relating to Walgreen's prebequest gift to the research center. In several memoranda, Gibson stated Walgreen told her that he was presenting prebequest gifts to "all of the charities in his Living Trust." Accordingly, the Walgreen Beneficiaries claimed that the Rotary Foundations were not each entitled to 10,000 shares of Walgreen stock, since it would be a double benefit.

¶ 16        The Rotary Foundation subsequently filed a motion to strike Gibson's affidavit and the Charity List. After responsive motions were filed, the trial court held a hearing on the pending motions on March 16, 2011. Although the record does not contain a transcript of the hearing, an April 14 order reveals that the judge heard arguments by the parties in open court. Following this, the court granted the Rotary Foundation's motion for summary judgment while rejecting the Walgreen Beneficiary's cross-motion for summary judgment. As a result, the trial court found the Rotary Foundations' motions to strike were moot. In the written order, the court held that there was "no ambiguity in any of the trust documents at issue."

¶ 17        The Walgreen Beneficiaries filed a motion to reconsider in which they argued the court failed to consider extrinsic evidence submitted in support of their motion for summary judgment to determine if there was a latent ambiguity in the trust. They further argued the trial court erred by failing to award them attorney fees "to be paid out of the property or fund in question in this litigation."

¶ 18        Following a hearing on the motion, held August 30, 2011, the court denied the Walgreen Beneficiaries' motion to reconsider. In an August 31 order, the court stated that it had considered the "extrinsic evidence" submitted by the parties, as well as the trust documents, and reiterated the absence of patent or latent ambiguity in the trust. The court further determined that the Walgreen Beneficiaries had failed to raise the issue of attorney fees in their motion for summary judgment or in their arguments at the hearing. The court added that the prior September 22, 2009, order regarding attorney fees was still pending on appeal. Following this determination, the Walgreen Beneficiaries filed a motion for leave to file a petition for attorney fees, which was denied on October 6, 2011.

¶ 19        The Walgreen Beneficiaries subsequently filed a notice of appeal of the April 14 and August 31 trial court orders disposing of the parties' summary judgment motions in appeal No. 1-11-2812, and a separate notice of appeal of the October 6 trial court order disposing of the attorney fees claim in appeal No. 1-11-3321. This court granted the Walgreen Beneficiaries' motion to consolidate the appeals.

¶ 20                                         ANALYSIS

¶ 21        Summary judgment is proper where the pleadings, affidavits, depositions, admissions,

and exhibits, when viewed in a light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Ruby*, 2012 IL App (1st) 103210, ¶ 13. Where, as here, the parties file cross-motions for summary judgment, they concede there are no genuine issues of material fact and invite the court to decide the questions presented as a matter of law. *Ruby*, 2012 IL App (1st) 103210, ¶ 13. Noting that this court is not bound by the parties' concessions (see *Hagen v. Distributed Solutions, Inc.*, 328 Ill. App. 3d 132, 137 (2002)), we proceed in our *de novo* review of the trial court's decision regarding summary judgment. *Id.*

¶ 22    The focus of this appeal relates to construing Walgreen's trust and, in particular, his 1999 amendment to the trust. The central purpose of trust construction is to ascertain the settlor's intent from the trust as a whole, and to effectuate that intent if not contrary to public policy. *Ford v. Newman*, 77 Ill. 2d 335, 338 (1979); *Stein v. Scott*, 252 Ill. App. 3d 611, 614 (1993). The settlor's intent is to be determined solely by reference to the plain language of the trust itself. *Stein*, 252 Ill. App. 3d at 615. In addition to the trust's language, the court may consider the circumstances surrounding the trust's execution to determine the settlor's intent (*Ruby*, 2012 IL App (1st) 103210, ¶ 19; *Bollman v. Pehlman*, 352 Ill. App. 3d 1203, 1205 (2004)), and extrinsic evidence may be admitted to aid interpretation only if the document is ambiguous, and the settlor's intent cannot be ascertained (*Stein*, 252 Ill. App. 3d at 615).

¶ 23    Consistent with their position below, the Walgreen Beneficiaries argue that while the trust demonstrates Walgreen intended to bequest each of the Rotary Foundations 10,000 of Walgreen company stock, Walgreen's lifetime gifts to the organizations unequivocally operated as an ademption or revocation of the bequests. Ademption is the extinction, alienation, withdrawal, or satisfaction of a legacy or devise by some act of the testator by which an intention to revoke is indicated; generally speaking, ademption is usually established by some act regarding the subject matter of the devise that interferes with the operation of a will, thus signifying an alteration in the subject matter of the legacy or devise. *Brady v. Paine*, 391 Ill. 596, 600-01 (1945); see also *Ruby*, 2012 IL App (1st) 103210, ¶ 16 (citing *Brady*). In other words, when a testator bequeaths a specific item of property to someone but then disposes of the item before dying, the bequest is said to be "adeemed," and the devisee cannot inherit that item or its value. *Bollman*, 352 Ill. App. 3d at 1206. This long-standing doctrine applies to devises of both real estate and bequests of personal property. *Brady*, 391 Ill. at 601.

¶ 24    As a result of the alleged ademption, the Walgreen Beneficiaries contend the trust necessarily contained a latent ambiguity. A latent ambiguity occurs where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a choice among two or more possible meanings. *Hays v. Illinois Industrial Home for the Blind*, 12 Ill. 2d 625, 628 (1958). For the threshold determination of whether a will, and by implication a trust, is ambiguous, the court may examine the four corners of the will and evidence brought by the parties which tends to show a latent ambiguity. *Coussee v. Estate of Efston*, 262 Ill. App. 3d 419, 424 (1994). If a petition to construe a will or trust states facts that, if proven, show a latent ambiguity, only then will a hearing with extrinsic evidence be held to determine the possible existence of a latent

ambiguity as alleged. *In re Estate of Smith*, 198 Ill. App. 3d 400, 402 (1990).

¶ 25        The Rotary Foundations respond that there is no ambiguity in the Walgreen trust and, even if there were, the evidence adduced did not show that Walgreen ever intended to adeem his gifts to them. Accordingly, the Rotary Foundations request that this court affirm the trial court's award of summary judgment in their favor and the denial of the Walgreen Beneficiaries' cross-motion for summary judgment.

¶ 26        The Rotary Foundations claim, alternatively, that the doctrine of ademption, while applicable to wills, does not apply in the context of trusts. They also argue that this court need not reach such a question if we affirm the summary judgment motion in their favor. Given that our disposition, not to mention that of the trial court, hinges on whether Walgreen adeemed the Rotary Foundations' bequests with his lifetime gift, we think it appropriate to consider first and foremost whether the doctrine of ademption applies in the trust context. Further analysis would otherwise prove fruitless. In *Ruby*, this court recently considered whether the doctrine of ademption should be considered in the trust context. *Ruby* noted that courts use the same principles to ascertain a settlor's intent when interpreting a trust document as used to interpret a will and, given that ademption also looks to intent, the court found "no reason why the concept should not be considered" with regard to trusts. *Ruby*, 2012 IL App (1st) 103210, ¶ 20. That Walgreen apparently created the trust referenced in his will as part of a comprehensive estate plan, further supports applying the ademption doctrine in the trust context. See *Wasserman v. Cohen*, 606 N.E.2d 901, 903-04 (Mass. 1993). The Rotary Foundations have not offered any persuasive reasons not to apply the doctrine of ademption to trusts, and we therefore follow *Ruby* to review the merits.

¶ 27        Here, the Walgreen Beneficiaries find it dispositive that Walgreen adeemed gifts to other organizations or entities following his trust amendment, and they argue that this effectively confirmed his intent to adeem his gifts to the Rotary Foundations as well. This, they suggest, exposes a "latent ambiguity" in the trust with regard to "all the gifts" in the Beneficiary List. In other words, their suggestion is that ademption to one necessarily begs the question of ademption to all, resulting in ambiguity in all the bequests.

¶ 28        The Rotary Foundations do not attempt to deny that Walgreen adeemed his bequests to the National Jewish Medical Foundation, the Rehabilitation Institute of Chicago, the Tau Kappa Epsilon Foundation, and the University of Michigan–organizations also identified in the Beneficiary List–by gifting the money to them during his lifetime. Nonetheless, they maintain the doctrine of ademption cannot be applied to them on the evidence before this court. We agree.

¶ 29        As an initial matter, we note that although the record suggests the stated bequests in Walgreen's Beneficiary List could not be fulfilled because there simply were not enough shares, this shortfall apparently was remedied. As related above, the September 22, 2009, court order drafted by the Walgreen Beneficiaries declared that, following settlement negotiations with the University of Michigan, a shortfall no longer existed and the trust maintained sufficient stock to satisfy all bequests. Although the record does not detail the Walgreen Beneficiaries' negotiations with the nine other organizations identified in their counterclaim, we read the September 22 order to mean that there are now sufficient shares

to satisfy any stated bequest to the Rotary Foundations.

¶ 30   Still, we are required to address the Walgreen Beneficiaries' position that Walgreen's actions during the end of his lifetime prove his intent to adeem these bequests, and they rely mainly upon *In re Estate of Kreitman*, 68 Ill. App. 3d 523, 527 (1979). In that case, the executor brought a petition to construe the decedent's will to declare a specific $5,000 legacy to respondent Northwest Home for the Aged was adeemed by the decedent's lifetime gift in that same amount to the named beneficiary. Noting that the respondent failed to answer or otherwise plead, the appellate court determined the trial court properly found the legacy adeemed because respondent had effectively admitted every allegation in the petition. The appellate court further noted that "it would not have been the intention of the decedent to make two bequests" to the same beneficiary, where the Northwest Home already had created a special plaque in memory of the decedent and his wife in accordance with the lifetime gift, thus fulfilling the very purpose of the legacy. *In re Estate of Kreitman*, 68 Ill. App. 3d at 527.

¶ 31   We find *Kreitman* distinguishable from the case *sub judice*. First, in contrast to *Kreitman*, the Rotary Foundations have pointedly *not* admitted ademption occurred. And, while *Kreitman* demonstrates that in certain instances a settlor's act of disposing of property during his lifetime that he specifically bequested *can* reveal intent to adeem, we do not believe that is case before us. See *Brady*, 391 Ill. at 601 ("The rule is well settled that if the testator, in his lifetime, disposes of property specifically devised by him, this will operate as a revocation ***."); but see *Hobin v. O'Donnell*, 115 Ill. App. 3d 940, 943 (1983) (if the decedent is incapable of forming requisite intent, there can be no ademption).

¶ 32   Intention as established by the evidence must prevail (*Pridmore v. Pridmore*, 187 Ill. App. 301, 306 (1914)), and, here, the written communications between Walgreen and certain organizations in the Beneficiary List unequivocally show that when Walgreen wished that his lifetime gift satisfy a specific bequest, he stated as much. See *Richardson v. Eveland*, 126 Ill. 37, 43 (1888) (to determine ademption, one must observe whether "there are words accompanying the subsequent gift sufficiently express to show an intention on the part of the donor that the latter benefit should be in substitution of the former"). That is, had Walgreen intended to adeem his bequest to the Rotary Foundations, we conclude the Walgreen Beneficiaries would have been able to present this court with some direct evidence of that intention during discovery.

¶ 33   While the Walgreen Beneficiaries would have us rely upon inference, the available evidence actually points the other way. It shows that Walgreen was a member and/or contributor of the Rotary Foundations and presented regular cash donations to Rotary International and also urged members of Rotary/One to include the organization in their estate plans. In 1997, Walgreen specifically pledged to bequest 20,000 shares of Walgreen's stock. Although the Walgreen Beneficiaries certainly presented evidence showing that Walgreen might have intended to adeem specific bequests to the National Jewish Medical Foundation, the Rehabilitation Institute of Chicago, the Tau Kappa Epsilon Foundation, and the University of Michigan, we decline to presume that Walgreen's intent regarding those organizations extends to the Rotary Foundations. In a somewhat analogous situation, this court has held that where a testator identifies "children" named in his will, naming two specific children, and it comes to light he has additional children, this does not create a latent

ambiguity as to the intended beneficiaries. *In re Estate of Hurst*, 329 Ill. App. 3d 326, 340-41 (2002). It is a basic principle that courts have a duty to construe wills or trusts as they find them rather than change or rewrite them (*Hurst*, 329 Ill. App. 3d at 341), and the ultimate question before us is not what Walgreen meant to say, but what he did say in his trust (see *In re Estate of Goodkind*, 356 Ill. App. 3d 607, 615 (2005)). To presume Walgreen intended to adeem gifts to the Rotary Foundations would be contrary to the plain language of the trust as a whole, including article 10's amendment provisions and to the Beneficiary List, which as the trial court stated below, unambiguously bequests the stated shares to the Rotary Foundations, among many others. See *Ruby*, 2012 IL App (1st) 103210, ¶ 19 ("where one construction of a will would render a portion of it meaningless and another construction would give effect to all provisions and all language, the construction giving effect to the latter construction will be adopted" (internal quotation marks omitted)); see also *Meily v. Knox*, 191 Ill. App. 126, 135 (1915) (noting that "the intention of the testator is the pole star for the direction of devises, and that all cases which depend upon it are best determined upon comparing all the parts of the devise itself without looking into a multitude of other cases, for each stands pretty much upon its own circumstances" (internal quotation marks omitted)). The Walgreen Beneficiaries have failed to demonstrate a latent ambiguity exists with regard to the Rotary Beneficiaries.

¶ 34        In reaching this conclusion, we question the Walgreen Beneficiaries' reliance on the Charity List to show Walgreen intended to adeem his bequest to the Rotary Foundations. As stated, the Charity List, which was apparently discovered by Walgreen's grandson, appears to be a handwritten list of gifts and bequests made to various foundations identified in both the 1999 tax document and also in the Beneficiary List, and has an upside down "Exhibit A" typed at the bottom, but no signature. Beyond that, very little is known about the document. "Evidence that would be inadmissible at trial is not admissible in support of or in opposition to a motion for summary judgment." *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009). Basic evidence rules require a proponent of documentary evidence to lay a foundation for the introduction of that document into evidence, and evidence must be presented to demonstrate that the document is what its proponent claims it to be. *Id.* The Walgreen Beneficiaries, in the face of the Rotary Foundations' motion to strike the Charity List, simply have not provided a sufficient foundation for admitting the document, and we decline to consider it. Moreover, its impact is speculative, and finding that it creates a latent ambiguity here would be tantamount to rewriting the trust. See *Smith*, 198 Ill. App. 3d at 401. The same can be said regarding Gibson's email, where she conveyed that Walgreen had stated he was presenting prebequest gifts to "all the charities in his Living Trust." Even were we to find this document admissible, there is no evidence that Walgreen acted consistently with Gibson's statement, leaving the content of the email equivocal at best.

¶ 35        We also reject the Walgreen Beneficiaries' insistence that the trial court refused to examine the extrinsic evidence submitted. The trial court apparently held a hearing on the parties' cross-motions for summary judgment and, per its April 14 order, stated in "open court" its reasons for denying the Walgreen Beneficiaries' motion. Yet, the Walgreen Beneficiaries have failed to include a transcript, a bystander's report, or an agreed statement

of facts reflecting the proceeding, which would be necessary to address their argument. See Ill. S. Ct. R. 323 (eff. Dec. 13, 2005); *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757 (2006). Moreover, the trial court stated in response to the Walgreen Beneficiaries' motion to reconsider that it had reviewed all the pleadings and evidence submitted. Regardless, we would remind the Walgreen Beneficiaries that our review of the matter is *de novo*, and, having reviewed the record, we cannot say a genuine issue of material fact exists sufficient to warrant a trial.

¶ 36   Having determined that Rotary was entitled to judgment as a matter of law, we reject the Walgreen Beneficiaries' alternative request for trial. We note that in the context of this case involving cross-motions for summary judgment, and where the Walgreen Beneficiaries specifically stated in their summary judgment motion they "contend that no genuine issue of material fact exists," their trial request makes little sense.

¶ 37   We next consider the Walgreen Beneficiaries' remaining contention that they are entitled to reasonable attorney fees. The Rotary Foundations respond that the September 22, 2009, trial court order denying the claims of "all beneficiaries" to attorney fees from the trust forecloses the Walgreen Beneficiaries' fee argument.

¶ 38   The trial court entered the September 22 order following the Walgreen Beneficiaries' motion, entitled "Resolution of Certain Issues to Facilitate Distributions to Beneficiaries and Settlement of Ademption Claims and for Suspension of Discovery Deadline." Therein, the Walgreen Beneficiaries stated they had settled with 7 of the 11 counterclaim defendants-beneficiaries, resolving their assertions of ademption and permitting the distribution of shares to the uncontested parties to commence. Although the agreed order noted that litigation between the Walgreen Beneficiaries and the Rotary Foundations remained pending, the order disposed of the attorney fees issue with respect to "all beneficiaries." The trial court then entered an Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) finding, thus dictating that its ruling was final and appealable. See *D'Agostino v. Lynch*, 382 Ill. App. 3d 639, 641-42 (2008) (an order is final if it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof).

¶ 39   Although the trial court entered a final order as to the issue of attorney fees for beneficiaries, the Walgreen Beneficiaries did not appeal the order within the requisite 30-day period. See Ill. S. Ct. R. 303(a) (May 30, 2008); R. 304(a) (eff. Feb. 26, 2010). Because they failed to do so, this court is without jurisdiction to review the September 22 order or the claim the Walgreen Beneficiaries now raise. See *D'Agostino*, 382 Ill. App. 3d at 642; *Levaccare v. Levaccare*, 376 Ill. App. 3d 503, 511 (2007). Similarly, this court is without jurisdiction to review the trial court's October 6, 2011, order denying the Walgreen Beneficiaries' motion for attorney fees. As the trial court no longer had subject matter jurisdiction over the matter to consider the merits, such an order is void. See *People v. Hood*, 387 Ill. App. 3d 380, 387 (2008); see also *People v. Flowers*, 208 Ill. 2d 291, 306-07 (2003) (noting that a void order does not cloak the appellate court with jurisdiction to consider the merits of an appeal). Based on the foregoing, we are compelled to vacate the trial court's order and to dismiss the Walgreen Beneficiaries' appeal No. 1-11-3321, from the October 6 trial court order, for lack of jurisdiction. *Hood*, 387 Ill. App. 3d at 387.

¶ 40                              CONCLUSION

¶ 41        Based on the foregoing, we affirm the judgment of the circuit court of Cook County granting summary judgment in favor of the Rotary Foundations and denying the Walgreen Beneficiaries' motion for summary judgment in appeal No. 1-11-2812. We dismiss appeal No. 1-11-3321 for lack of jurisdiction.


¶ 42        No. 1-11-2812, Affirmed.

¶ 43        No. 1-11-3321, Dismissed.