NORTHWESTERN UNIVERSITY, Plaintiff-Appellee, v. HELEN McLO-RAINE *et al.*, Trustees, *et al.*, Defendants-Appellants.—HELEN McLO-RAINE *et al.*, Trustees, Plaintiffs-Appellants, v. DAYTON CEMETERY AS-SOCIATION *et al.*, Defendants-Appellees.

First District (2nd Division)   Nos. 81—2362, 82—151 cons.

Opinion filed August 3, 1982.

Samuel H. Young, of Skokie, and Alan Ganz, of Rooks, Pitts, Fullager & Poust, of Chicago, for appellants Helen McLoraine and Paul F. Cook.

Lee A. Freeman, of Freeman, Rothe, Freeman & Salzman, of Chicago, for appellant Lyric Opera.

Michael C. Weston, of Evanston, and Thomas E. Swaney, Arlene C. Erlebacher, and Shelley C. Chapman, all of Sidley & Austin, of Chicago, for appellee Northwestern University.

JUSTICE DOWNING delivered the opinion of the court:

This consolidated appeal, arising out of related cases in the circuit court, presents us with one question for decision: did the settlor of a revocable *inter vivos* trust validly amend that trust prior to her death?

Plaintiff Northwestern University filed a complaint seeking construction of a trust, an injunction, and an accounting. After a bench trial, the circuit court issued a judgment order granting the relief sought in the complaint. Defendants Helen McLoraine and Paul F. Cook, trustees, and various charitable organizations appeal in case No. 81-2362.

Subsequently, trustees Helen McLoraine and Paul F. Cook filed a complaint seeking construction of another provision of the same trust. After a bench trial, the circuit court entered a judgment order adverse to the trustees. The trustees appeal in case No. 82-151.

The facts in these cases are virtually uncontested. Mabel Greene Myers (Mrs. Myers), in 1961, created a living trust known as the Myers Trust. It was first amended in 1962. In 1968 and 1973, it was amended by completely restating it. The 1973 trust was in effect at the time of Mrs. Myers' death in 1979. Its assets at the time of her death were worth approximately $1 million.

The 1961 trust indenture consisted of the following relevant provisions. Article First conveyed the properties listed in exhibit A to the trust. Exhibit A, listing various properties, was appended to the trust indenture. Article Second provided for the distribution, during the donor's life, of $200 per month to Ethel Seixas and $1,000 per year to the Pioneer Fund, a not-for-profit corporation. Article Second provided for certain specific bequests upon the death of the donor, per an exhibit B attached. (No copy of an exhibit B is contained in the record

on appeal, and apparently none exists today.) The residue was to be distributed to the Pioneer Fund, or, alternatively, to Otterbein College and the University of Chicago. Article Ninth provided that the trust was revocable during the life of the donor, and further provided:

> "The Donor further reserves the right to alter, change, or modify any of the provisions of this Indenture in any respect and to any extent at any time by an instrument in writing signed by her and delivered during the Donor's life to the Trustees then acting hereunder ***."

The indenture was signed by the settlor, the two trustees, three witnesses, and was notarized.

Mrs. Myers amended the trust in 1962 by executing a formal instrument, signed by her and delivered to the trustees. The signatures of the trustees acknowledged this delivery. This amendment specified that payments to Ethel Seixas and the Pioneer Fund be made from principal if net income was insufficient for such purposes.

The trust was fully amended by Mrs. Myers in 1968 by completely restating it. Article Third provided for, upon termination of the trust, specific bequests to the individuals listed in exhibit 1. The residue was to be paid to Otterbein College. Article Ninth, dealing with alteration, remained unchanged from the 1961 indenture. This restatement was executed with the same formalities as the original indenture.

The trust was again completely restated in 1973. Mrs. Myers and Helen McLoraine, her daughter, were again co-trustees. Article First again stated that the property conveyed by the donor to the trust was described in exhibit A. This exhibit was appended to the indenture. Article Third again provided for the termination of the trust estate. An annuity paying $250 per month was to be purchased for Ethel Seixas. Specific bequests were to be made to those persons listed in exhibit 1. The residue was to be divided equally among the charitable organizations listed in exhibit 2. Article Ninth, regarding alteration, remained unchanged from the 1961 and 1968 indentures. Again, all the formalities of execution were observed.

When the 1973 indenture was executed, it had appended to it exhibit 1 and exhibit 2. Exhibit 1 was a list of over 40 names of individuals, with amounts ranging from $5,000 to $25,000 listed beside their names. Exhibit 2 was a list of eight charitable organizations: Arthritis Foundation, Illinois Chapter; Mid America Hearing Research Foundation; National Right to Work Foundation; Planned Parenthood; Americans United; Lyric Opera; Field Museum; and Otterbein College. Mrs. McLoraine, as co-trustee, received a copy of the indenture without exhibits 1 and 2.

After Mrs. Myer's death, her daughter, co-trustee Helen McLoraine, found the 1973 indenture in Mrs. Myers' safe deposit box at the First National Bank of Chicago. No one but Mrs. Myers had access to the box. The original exhibits 1 and 2 were not then attached to the indenture. A revised exhibit 1, containing several changes, was stapled to the indenture. The revised exhibit 1 had been prepared by Walter Bacon, Mrs. Myers' attorney, at least a year after the 1973 indenture was executed. There was no substitute exhibit 2. There was, attached by paper clip to the indenture at the point in Article Third, paragraph 5 where it described that the residue went to the charitable organizations listed in exhibit 2, a small, unsigned slip of paper with the following words typed on it:

> "shall be given to the Arthritis Section, Department of Medicine of Northwestern University Medical School for the purpose of research.
> Arthritis-Connective Tissue Diseases."

This note was typed on Mrs. Myers' typewriter.

The original exhibits 1 and 2 were found by Mrs. McLoraine in the office that Mrs. Myers maintained at her apartment. Mrs. McLoraine had never received a copy of the original exhibits, nor of the subsequent exhibits.

Approximately one month prior to Mrs. Myers' death, she and Mrs. McLoraine participated in the Pioneer Fund's gift of $500,000 to Northwestern University Medical School, Arthritis and Connective Tissue Section. Both women were on the board of the Pioneer Fund; Mrs. Myers contributed about $18,000 toward the gift, while Mrs. McLoraine supplied the balance. At this time, Mrs. Myers stated to Mrs. McLoraine, "Now I know what to do with the residue and remainder." Mrs. McLoraine understood her to be referring to the Myers Trust. Mrs. McLoraine testified that in the year prior to February 21, 1979, Mrs. Myers discussed with her certain possible changes in some of the individual beneficiaries of the Myers Trust.

After Mrs. Myers' death, Paul F. Cook replaced her as a trustee of the Myers Trust. Cook and Mrs. McLoraine, as co-trustees, sent a letter to all the charitable beneficiaries listed in original exhibit 2 and to Northwestern University advising them of all the relevant facts. Subsequently, the trustees concluded that no amendment to the 1973 indenture had occurred, and that they were going to proceed in accordance with original exhibits 1 and 2.

Northwestern University filed suit in the circuit court, naming as defendants the co-trustees and the eight charities listed in original exhibit 2. After a trial, the circuit court ruled that the 1973 indenture

had been amended by the small slip of paper, and ordered the residue of the Myers Trust distributed to Northwestern University. The trustees and the charities appeal this ruling in case No. 81-2362.

The trustees subsequently filed suit in the circuit court seeking instructions as to whether they should make distributions to the individual beneficiaries in accordance with the original exhibit 1 or the new exhibit 1. Named as defendants were the individuals listed in both exhibits 1, the eight charities, and Northwestern University. Pursuant to a stipulation of the parties, the trial transcript and the exhibits from case No 81-2362 were incorporated as the only evidence in this case. The circuit court held that the 1973 indenture was amended by the new exhibit 1 and entered judgment in favor of the beneficiaries listed on that exhibit. The trustees appeal this ruling in case No. 82-151.

Appellants, the co-trustees and the eight charitable organizations, contend that the trial court erroneously held that the Article Ninth requirements for alteration of the trust do not apply to the exhibits. They submit that the exhibits are integral parts of the indenture and that Article Ninth must apply to them. Appellants also contend that the purported amendment of exhibit 2 was actually an attempted amendment to the "body" of the indenture, and thus Article Ninth must clearly apply. Finally, appellants contend that the trial court erred in its alternative holding that, if applicable, the Article Ninth requirements were satisfied.

## I

The trial court, agreeing with appellees' argument, held that the Article Ninth requirements for amendment of the indenture did not apply to amendments of the exhibits. Appellees' argument is that Article Ninth is ambiguous as to whether it applies to the exhibits, and that as a consequence, extrinsic evidence must be examined to determine whether Mrs. Myers intended Article Ninth to apply to the exhibits. Their interpretation of the extrinsic evidence is that Article Ninth does not apply to the exhibits. Appellants contend that Article Ninth unambiguously applies to *all* amendments.

Article Ninth states that it applies to "any of the provisions of this Indenture." Appellees argue that "this Indenture" refers only to the "body," and not to the "Exhibits." At best, they contend, it is ambiguous. Appellees then look at what they consider the relevant extrinsic evidence. They consider the intent of Mr. Myers to be all important. They argue that she always treated the exhibits differently than the body of the indenture, and thus that she intended Article Ninth to be inapplicable to the exhibits. Appellees note that Mrs.

Myers did not give copies of the exhibits to her co-trustee, and that the exhibits did not contain signature lines and were not signed by Mrs. Myers. Thus, appellees contend that Mrs. Myers did not intend that the Article Ninth "signature" and "delivery" requirements apply to the exhibits.

■ We reject the soundness of the chain of reasoning postulated by appellees. It is plain to us that the exhibits to the 1973 indenture are integral parts of the indenture, and that Article Ninth must apply to them. The essential elements of a trust are: settlor, trustee, property, and beneficiaries. (Bogert, Trusts sec. 1 (2d ed. 1965).) Most of the property and substantially all of the beneficiaries are named in exhibits to the 1973 indenture.

■ The exhibits were attached to the original 1973 indenture at the time it was executed by Mrs. Myers, and thus should be treated as part of the indenture. The Illinois Supreme Court stated in *Wynekoop v. Wynekoop* (1950), 407 Ill. 219, 225, 95 N.E.2d 457:

> "Unless a contrary intention is manifested, instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction, are regarded as one instrument and will be construed together as if they were as much one in form as they are in substance."

In *Wynekoop*, the documents were not even attached to each other. Here, the documents were all bound together in a "blue back" document cover. We see no ambiguity in Article Ninth, when read in light of these uncontroverted facts.

■ We also disagree with appellees' contention that it was the intent of Mrs. Myers to exclude the exhibits from the ambit of Article Ninth. As appellants correctly note, Mrs. Myers treated the exhibits differently in only one way: they were not attached to the copy of the 1973 indenture which was given to her co-trustee. The understandable reason for this was to prevent potential beneficiaries from knowing of changes made in the amount which they were to receive. While Mrs. Myers did not sign the original exhibits 1 and 2, they were appended to the executed indenture, which was signed by Mrs. Myers and her co-trustee, Mrs. McLoraine. While there were no signature lines on the original exhibits, there were also no signature lines on any other page of the 1973 indenture, save the last page.

We do not believe that this sole difference in treatment evinces an intent to not subject the exhibits to Article Ninth, when considered in conjunction with the plain language of Article Ninth and the location of the original exhibits on the executed indenture.

■ We conclude that the requirements of Article Ninth must be

satisfied in order to properly amend the exhibits. Article Ninth expressly provides a method for alteration of the trust. Where a method of exercising a power of modification is described in the trust instrument, the power can be exercised only in the manner described. In *Parish v. Parish* (1963), 29 Ill. 2d 141, 193 N.E.2d 761, the trust instrument provided for modification by a written agreement signed by the settlor and the trustees. The supreme court held an attempted oral modification ineffective, stating:

> "It is elementary that if the method of exercising a power of modification is described in the trust instrument, the power can be asserted only in that manner. (Bogert, Trusts and Trustees, sec. 993; Restatement of the Law of Trusts, sec. 331; 54 Am. Jur., Trusts, sec. 69.)" 29 Ill. 2d 141, 149.

Accordingly, the circuit court erred in holding the Article Ninth requirements inapplicable to the exhibits.

## II

We next consider a contention raised by appellants as an alternative to the argument discussed in section I of this opinion. Appellees contend that the requirements of Article Ninth do not apply to the exhibits, but rather only to amendments of the "body." Appellants contend, and we agree, that the purported amendment of exhibit 2 involved an amendment to the "body" of the indenture (assuming, *arguendo*, the validity of a distinction between "exhibits" and "body").

Article Third, paragraph 5 of the 1973 indenture states:

> "5. The balance of the trust estate, after making the specific bequests listed in Exhibit 1, and after making or providing for the payments specified in Article Seventh hereof, shall be distributed in equal amounts to the organizations listed in Exhibit 2."

The purported amendment consisted of two steps: (1) removing the original exhibit 2, which was originally attached to the indenture; and (2) attaching to the body of the indenture at paragraph 5 the small slip of paper referring to Northwestern University. If this second step was an attempt to amend the indenture, it was an attempt to amend the "body" of the indenture by changing paragraph 5. The phrase on the slip of paper fits grammatically into paragraph 5 after the word "hereof." To illustrate, the following is paragraph 5 with the amendment:

> "5. The balance of the trust estate, after making the specific bequests as listed in Exhibit 1, and after making or providing

for the payments specified in Article Seventh hereof, ~~shall be distributed in equal amounts to the organizations listed in Exhibit 2~~. *shall be given to the Arthritis Section Department of Medicine of Northwestern University Medical School for the purpose of research.*"[1]

By virtue of the manner of attachment, its location, and wording, we believe it clearly indicates that if Mrs. Myers was thinking of amending, it was as an amendment of Article Third, paragraph 5. Therefore, the requirements of Article Ninth would be clearly applicable.

### III

In each of the preceding sections of this opinion, we have concluded, via alternate legal pathways, that the purported amendments to exhibits 1 and 2 of the 1973 indenture must satisfy the requirements of Article Ninth. The trial court held that these requirements were satisfied. In this section, we determine whether or not that conclusion was correct.

Article Ninth sets forth the following three specific requirements: (A) an instrument in writing; (B) signature; and (C) delivery. The briefs of the parties discuss the "signature" and "delivery" requirements, but ignore the "instrument in writing" requirement. We consider this overlooked requirement because it is dispositive of the issue.

### A.

The term "instrument in writing" suggests to us some type of formal legal document consisting of substantially more than an unsigned scrap of paper and a list of names. More significantly, it is apparent to us, based upon the various documents in evidence, that Mrs. Myers considered an "instrument in writing" to be a formal legal document.

We can determine the meaning of the term "instrument in writing" in Article Ninth by examining the way in which Mrs. Myers previously amended the trust. (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 335, 75 N.E.2d 874.) The original 1961 indenture, containing the same Article Ninth, was amended by Mrs. Myers on July 30, 1962. On that date, she directed a letter to the trustees stating the amendment and required the trustees to acknowledge delivery with their signatures. The two subse-

---

[1]Typed approximately three lines below the new wording is the following:
"Arthritis-Connective Tissue Diseases"

quent amendments to the trust involved complete restatements of the trust in 1968 and 1973, each time with the formalities of witnesses, signatures, and delivery.

The court in *First National Bank v. Oppenheimer* (1963), 23 Ohio Op. 2d 19, 190 N.E.2d 70, was confronted with a similar question. There, the settlor had created a living trust which stated that it could be altered by an instrument in writing signed by the grantor and delivered to the trustee during the life of the grantor. (23 Ohio Op. 2d 19, 20, 190 N.E.2d 70, 71.) After determining that an "instrument in writing" referred to a formal document, the court concluded that a fully executed copy of a will could properly be described as an instrument in writing. See also *In re Estate of Wilson* (1949), 404 Ill. 207, 210-11, 88 N.E.2d 662; *In re Estate of Brokaw* (1950), 339 Ill. App. 353, 357-58, 90 N.E.2d 300.

■ It is plain to us that Mrs. Myers' conception of an "instrument in writing" was a formal legal document. The purported substitute exhibits 1 and 2 do not meet this requirement of Article Ninth.

### B.

The second requirement for amendment found in Article Ninth is the requirement of "signature." Appellants argue that this requirement was not met because neither the substitute exhibit 1, nor the scrap of paper replacing exhibit 2, was signed. Appellees concede that these papers were not signed but present various theories by which signature may be implied.

■ Initially, relying on *Wynekoop v. Wynekoop* (1950), 407 Ill. 219, 95 N.E.2d 457, appellees argue that because the new documents were attached to the executed 1973 indenture, they became integrated into the 1973 indenture, thus adopting the original signature on the 1973 indenture. *Wynekoop*, however, requires the presence of four factors before integration will be found. They are: same time, same parties, same purpose, and same transaction. (407 Ill. 219, 225.) Since the "new" exhibits were not created at the same time as the 1973 indenture, they cannot be integrated therein.

Appellees next rely on a number of statute of frauds cases in which the signature requirement was "liberally" construed. Illustrative of these cases is *Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 390 N.E.2d 428. The issue before the court in *Mid-Town* was whether a real estate sales contract satisfied the statute of frauds, where the defendant seller did not sign the contract. The court, considering numerous documents involved in the case, held that in sum, these documents satisfied the statute of frauds. The basis of

the holding by the court involved consideration of the underlying purpose of the statute which is to prevent enforcement of contracts unless the court can be certain of the existence and terms of the contracts. The court was convinced that no fraud would be perpetrated by enforcement of the contract. 72 Ill. App. 3d 296, 305; see also *Jones v. Olsen* (1980), 80 Ill. App. 3d 1016, 1017-18, 400 N.E. 2d 665, *appeal denied* (1980), 81 Ill. 2d 584.

Appellants argue that the reasoning behind the statute of frauds cases is not applicable to this case where the signature requirement is not found in a statute but was created by Mrs. Myers. They contend that since the distributions were to take effect after the death of the settlor, wills cases are more analogous than statute of frauds cases. Appellants rely on *Hoffman v. Hoffman* (1938), 370 Ill. 176, 18 N.E.2d 209, in which a document purporting to be a will was denied admission to probate because it did not contain the signature of the testator. The document was in the handwriting of the testator and contained her name. The court stated: "The decisive question is not whether the deceased intended the instrument to be her will, but whether she intended the name appearing in the exordium clause to be her signature." 370 Ill. 176, 179.

We believe that the standard which should be applied is that which was followed by Mrs. Myers. She actually signed every previous amendment. Thus, by her course of action, it is clear to us that she established the requirement that an actual signature is required by Article Ninth.

## C.

The final requirement of Article Ninth is the "delivery" requirement. Since the purported amendments were never actually delivered to Mrs. McLoraine, appellants contend that no delivery occurred. Appellees argue that "constructive delivery" occurred when Mrs. Myers placed the exhibits in her safe deposit box with the intent that Mrs. McLoraine take possession of them and when Mrs. McLoraine did in fact take possession of them. As in the previous subsection, appellees ask this court to liberally construe the requirements of Article Ninth.

Appellees initially rely on several cases in which a delivery requirement was relaxed. Illustrative is *In re Estate of Wood* (1973), 32 Cal. App. 3d 862, 108 Cal. Rptr. 522, where a donee could only exercise a power of appointment by a written instrument delivered to the trustee during the donee's lifetime. The donee delivered the instrument to her attorney, but the attorney did not deliver the instrument to the trustee until after her death. The court determined that the

possible purposes of the requirement of delivery during lifetime were: (1) to assure the authenticity of the instrument; (2) to be certain of the intent of the donee to deliver the instrument during her lifetime; and (3) to inform and protect the trustee. The court concluded that a holding of valid delivery would not thwart any of these purposes. We do not think any of the three tests are satisfied in the instant case. In fact, the questions of authenticity and intent go to the heart of the instant litigation. Thus, the reason for the "delivery" requirement becomes significant.

Appellees next argue, citing *St. Louis Union Trust Co. v. Dudley* (Mo. App. 1942), 162 S.W.2d 290, that a failure to comply with the delivery requirement was excused by the "waiver and acquiescence" of the co-trustee, Mrs. McLoraine. Contrary to appellees' claim, we find no factual basis in the record for this conclusion.

Finally, citing *Prince v. Prince* (1913), 258 Ill. 304, 101 N.E. 608, appellees argue that the controlling factor must be the intent of the settlor to deliver the amendments to the trustee. This intent was manifest, according to appellees, by Mrs. Myers placing the amendments in her safe deposit box with the knowledge that Mrs. McLoraine would find them. Compared with the formal delivery achieved by Mrs. Myers in the three other amendments of the trust, it is impossible for us to see the intent which appellees claim existed.

■ The only possible conclusion we can reach is that Mrs. Myers did not deliver the amendments to her co-trustee as required by Article Ninth.

In sum, we hold that the trial court erred in finding the requirements of Article Ninth satisfied.

## IV

We find that appellees failed to establish by a preponderance of the evidence, and the circuit court erred in finding, that Mrs. Myers amended the Myers Trust. The circuit court's error in so finding is contrary to the manifest weight of the evidence. We hold that the trustees should proceed in accordance with the exhibits that were appended to the 1973 indenture at the time of its execution. Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

PERLIN and HARTMAN, JJ., concur.