# Illinois Official Reports

## Appellate Court

***McCarthy v. Taylor*, 2014 IL App (1st) 132239**

| | |
|---|---|
| Appellate Court Caption | GERALD S. McCARTHY, Plaintiff-Appellant, v. ROZLYN TAYLOR, ELAINE LAWELL, WAYNE REYNOLDS, SR., and DEVON MORRIS, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2239 |
| Filed | August 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the creator of a trust named plaintiff as the successor trustee of the trust if the named successor trustee could not act at the time of the creator's death, and the creator made a handwritten amendment to the trust appointing defendant as the successor after the original successor trustee died and just before the creator committed suicide, the trial court's finding that the handwritten amendment was valid was upheld by the appellate court, notwithstanding plaintiff's contentions that the amendment did not comply with the requirements of the trust's amendment clause or the laws of Illinois, since the amendment had to be "in writing," but there was no requirement that the amendment had to be a separate formal legal document, it did not need to contain a signature or an "express intent" of amending, it did not have to be delivered to the successor trustee and it did not have to comply with the formalities of prior amendments, such as being notarized or witnessed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-0278; the Hon. Rodolfo Garcia, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

James E. Taylor, of Law Office of James E. Taylor, P.C., of Chicago, for appellant.

Colin Quinn Commito and Luther Franklin Spence, both of Law Office of Luther Franklin Spence & Associates, of Maywood, for appellees.

Panel

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Taylor concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Gerald S. McCarthy appeals the trial court's finding that a handwritten amendment to a trust naming defendant Rozlyn Taylor as the successor trustee is valid and enforceable. Plaintiff claims: (1) that during the last years of decedent Abraham Lincoln Reynolds III's life and at the time of his death, plaintiff was successor trustee; and (2) that the handwritten amendment to the trust appointing defendant as successor trustee is invalid as it neither complied with the requirements of the trust's own amendment clause nor complied with the requirements for amendments under Illinois law. For the following reasons, we affirm.

¶ 2                                 BACKGROUND
¶ 3                              I. The Complaint
¶ 4    On January 4, 2013, plaintiff filed a verified complaint for declaratory judgment and other relief.
¶ 5    The complaint alleges that on July 20, 2006, Reynolds created and executed the "A.L. Reynolds III 2006 Declaration of Living Trust" (the trust). Reynolds was the "first trustee and instructed that he would have full power over the trust during his life and that after his death the trust assets 'shall be administered by [Reynolds'] successor trustee(s) in accordance with the terms that are set forth' " in the trust. The trust named Cherie Coles[1] as the successor trustee and it provided that "if Coles could not act at the time of [Reynolds'] death, and no alternate successor was named," then plaintiff was to be appointed second successor trustee. The trust

_____

[1]According to the trial court's oral opinion, Cherie Coles was the love interest of Reynolds, but predeceased him.

granted 10% of the residuary estate to plaintiff, 80% to Coles, and 10% to Elaine Lawell. However, if Coles predeceased Reynolds, her 80% interest would go to plaintiff.

¶ 6    Coles passed away on April 23, 2007. The complaint alleges that, after Coles' death, Reynolds never appointed a replacement successor trustee, and "thus, pursuant to the terms of the Trust [plaintiff] became the successor trustee."

¶ 7    On March 3, 2010, Reynolds "amended the Trust by a type-written, executed[,] and notarized document." Furthermore, the complaint alleges that this amendment "was delivered to [plaintiff], as successor trustee, during [Reynolds'] life as required by the Trust in order to make the Amendment effective."

¶ 8    The complaint alleges that Reynolds left plaintiff a voice message on December 15, 2012. The message indicated that Reynolds was taking his own life and that "something was left in [Reynolds'] apartment."

¶ 9    Reynolds committed suicide on December 15, 2012. After plaintiff listened to the voice message left by Reynolds, on December 16, 2012, he contacted the Chicago police department, which discovered Reynolds' body in his automobile.

¶ 10    The complaint alleges that defendant[2] was on the scene when the police discovered the body and that she was left alone to go to Reynolds' apartment. The complaint further alleges that, "on information and belief, Taylor removed items from the apartment."

¶ 11    According to the complaint, Reynolds' attorney contacted plaintiff on December 16, 2012, and told him that plaintiff was the successor trustee and that there were tasks that had to be accomplished. However, after meeting with defendant, the attorney contacted plaintiff and told him that he had forgotten that Reynolds had come to see him about a week before his death and given him instructions on amending the trust. The attorney told plaintiff that, under the amendment, defendant, not plaintiff, was the successor trustee and would take 80% of the trust assets.

¶ 12    The complaint alleges that on December 19, 2012, the attorney sent plaintiff a copy of the amendment to the trust with a cover letter, which stated:

"You indicated to me by phone that A.L. left you a message in the evening of December 17, 2012, advising you that he visited with me and that he wanted you and Rozlyn to share the trust assets. At home at about mid-day on that same date, [Reynolds] presented to me the amended trust document that he had made in his own handwriting."

Two days later, on December 21, 2012, the attorney sent plaintiff a letter stating that his reference to December 17, 2012, in the cover letter should be replaced with December 15, 2012, the date that Reynolds passed away.

¶ 13    The complaint alleges that the amendments "were not initialed, were not type-written, were not signed, and were not notarized–as the Trust and [2010] amendment had been." The complaint further alleges that "the revisions are inconsistent *** and make no sense in places." For example, "on page 2, [plaintiff's] interest is stated to be both 20 and 10%."

¶ 14    According to the complaint, "[the attorney], presumably at the direction of Taylor, began to contact financial institutions, the medical examiner, the condominium association, etc.

_____

[2]According to the trial court's oral opinion, after Cherie Coles passed away, Reynolds met defendant and the two became intimately involved.

claiming that he was acting under the direction of the successor trustee, Taylor, and indicating that Taylor had [the] power to direct the Trust." On December 26, 2012, plaintiff sent a letter to the attorney "requiring him to cease and desist from taking [any] further steps related to the Trust or any amendments thereto, actual or purported." On December 28, 2012, the attorney "indicated that he would refrain from liquidating assets under the Trust while this suit was drafted and filed[,] but did not commit to taking no further action under the Trust."

¶ 15        In the complaint, plaintiff requested that the trial court declare the 2012 amendments to the trust invalid, enter a temporary restraining order preventing defendant from taking any actions with respect to the trust, and enter a preliminary and permanent mandatory injunction for the same. Moreover, plaintiff alleges "on information and belief, [that] Taylor, in conjunction with [the attorney] wrongfully assumed control, dominion and/or ownership of Trust assets."

¶ 16                                            A. The Trust

¶ 17        The first paragraph of the trust declares that the trust consists "of the property identified on [an] attached Schedule of Property." It declares Reynolds "first trustee" and provides that, upon Reynolds' death, the trust shall "be administered by [his] successor trustee(s) in accordance with the terms that are set forth" in the trust.

¶ 18        The second paragraph of the trust, hereinafter referred to as "the amendment clause," provides:

> "At any time during my life, I may amend or revoke this instrument or remove the successor trustee, by written notice delivered to the successor trustee, and if this instrument is completely revoked, all trust property held by the trustee shall be transferred and delivered in total and revert back to me as my personal and/or individual property or as I otherwise may direct in writing."

¶ 19        The third paragraph of the trust, hereinafter referred to as "the succession clause," names Coles as Reynolds' successor trustee. The remainder of the paragraph provides:

> "The successor trustee may resign at any time by written notice to me if living, otherwise to each beneficiary then entitled to receive assets from the trust. In the case of the resignation, refusal or inability to act of the successor trustee appointed to act hereunder, notice should be provided to me, if living, otherwise to the beneficiaries who shall appoint another successor trustee. If such notice is received by me and I am unable to then appoint a second successor trustee, I declare that Gerald McCarthy *** is hereby appointed second successor trustee. In the event that neither Cherie Coles nor Gerald McCarthy are able to serve as successor trustees and I am unable to then appoint an alternative second successor trustee, I appoint [my attorney] to serve in their stead."

¶ 20        The fourth paragraph provides that, upon Reynolds' death, the successor trustee is to take possession of and provide care for Reynolds' dog "Joy Joy." If the successor trustee is unable to provide for his dog, Elaine Lawell is to provide for Joy Joy.

¶ 21        The fifth paragraph provides that all unliquidated assets and property in the trust are to be sold "and, thereby, reduced to cash" upon Reynolds' death. After the cash is used to satisfy certain expenses, obligations, and debts, the trust provides that "the remaining cash shall be distributed" in the following manner: (1) 10% to plaintiff; (2) 10% to Lawell; and (3) 80% to Coles.

¶ 22        The sixth paragraph of the trust provides, in relevant part:

"In the event that Cherie Coles pre-deceases me, her percentage share (80%) shall be given to Gerald McCarthy and Gerald McCarthy's percentage share (10%) *** shall [be] extinguished and be given to Reverend Wayne Reynolds, Senior."

¶ 23 Finally, the last paragraph of the trust provides:

"It is my further intention that this document and its contents remain confidential during my life and shall not be disclosed to anyone including the successor trustee(s) named herein and the beneficiaries; the original shall be kept in my possession and a duplicate of the original shall be maintained by [my attorney] who, upon my death, shall distribute copies to my successor trustee and the beneficiaries."

¶ 24 A schedule of the property "encompassed and *** owned by [the] trust" is attached to the document. Among other assets, the attachment lists Reynolds' checking account, money market checking account, two individual retirement accounts (IRAs), multiple savings bonds, and a "1996 Mercury Grand Marquee automobile."

¶ 25 B. 2010 Amendment

¶ 26 On March 3, 2010, Reynolds executed an "Amendment to the Abraham Lincoln Reynolds, III 2006 Declaration of Living Trust" (2010 amendment). Like the trust, the 2010 amendment is typewritten, signed, and notarized.

¶ 27 Specifically, the 2010 amendment: (1) "clarified and augmented" the powers of the trustee to include the powers "to borrow money on behalf of the trust and to pledge and encumber property of the trust" and (2) provided that "real property owned by [the trust] is encumbered or conveyed by [Reynolds] to secure payment" for a "Home Equity Conversion Mortgage" (HECM) through Wells Fargo Bank.

¶ 28 C. Cover Letter and 2012 Amendment

¶ 29 In a cover letter dated December 19, 2012, the attorney informed plaintiff that Reynolds came to the attorney's home prior to his suicide and presented the attorney with an amended trust document that he "had made in his own handwriting." The attorney wrote that the amendments named defendant as successor trustee, not plaintiff, and that Reynolds "assured [the attorney] that they represented his desire as the settlor and first trustee of the trust assets."

¶ 30 The attorney attached a copy of the 2012 amendment to his letter to plaintiff. The document is an exact copy of the original trust. As a result, the document bears Reynolds' initials on pages one through three, Reynolds' signature on page four, and the original notarization from when Reynolds executed the document in 2006. However, certain words are crossed out in the body of the document. Where a provision or word is crossed out, a new word or provision is handwritten above.

¶ 31 Relevantly, wherever Coles' name appears on a document, it is crossed over by hand, and "Rozlyn Taylor" is handwritten above. Additionally, in the fifth paragraph, the distribution of the remaining cash after expenses is modified. Both the names and respective shares of Lawell and Coles are crossed off. Handwritten above Lawell's name are the words "10% to Devon Morris." Handwritten above Coles' name are the words "70% [to] Rozlyn Taylor." Additionally, "20%" is handwritten above plaintiff's original 10% share.[3] Thus, the changes

---

[3]Unlike Lawell's and Coles' original shares, plaintiff's original "10%" share is not crossed out.

- 5 -

appear to increase plaintiff's share from 10 to 20%, give Lawell's original 10% share to Devon Morris, and change the original "eighty percent to Cherie Coles" to "70% [to] Rozlyn Taylor."

¶ 32    Finally, on the attached schedule of property, Reynolds' checking account, money market checking account, two IRAs, and multiple savings bonds are crossed out. The word "gone" is handwritten next to each one. At the bottom of the page, different checking accounts and IRA accounts are handwritten. Last, "1996 Mercury Grand Marquee" is crossed out. Handwritten above is "1988 Oldsmobile."

¶ 33                                    II. Pretrial Proceedings

¶ 34    On January 9, 2013, the trial court entered a temporary restraining order against defendant requiring her to refrain from taking any actions with respect to the trust. On February 11, 2013, the temporary restraining order was extended to March 20, 2013. On March 13, 2013, defendant filed her answer and affirmative defenses to plaintiff's verified complaint.

¶ 35                                            III. Trial

¶ 36    On March 21, 2013, the trial court held a hearing to determine the validity of the 2012 amendments. The trial court took the matter under advisement and directed the parties to prepare written closing arguments to be submitted by April 23, 2013.[4] Additionally, the trial court further extended the temporary restraining order until May 8, 2013.

¶ 37    In her written closing arguments, defendant argued that under the terms of the trust, plaintiff was never named successor trustee. Defendant argued that there were two conditions precedent to plaintiff becoming successor trustee: (1) Reynolds had to receive notice that Coles was unable to serve as successor trustee, and (2) Reynolds had to be unable to appoint a second trustee. While the first condition occurred when Reynolds received notice of Coles' passing, defendant argued, Reynolds was never unable to appoint a second trustee and in fact did appoint defendant as successor trustee with the 2012 amendments.

¶ 38    In her written closing arguments, defendant quoted the attorney's testimony at trial, in which the attorney testified that plaintiff, "as a matter of fact, was never named successor trustee at all by Mr. Reynolds." Additionally, defendant quoted the attorney as testifying that Reynolds "never was [unable to appoint a successor trustee]. He was always able and did at the end [appoint defendant as successor trustee]."

¶ 39    Additionally, defendant argued that "the undisputed evidence at trial shows that Reynolds *purposely* reserved in his trust document the unfettered right to amend or revoke it." (Emphasis in original.) Defendant further argued that the 2012 amendments were valid because they complied with the amendment clause set out in the original trust, which, according to defendant, placed no restrictions on Reynolds' ability to amend the document.

¶ 40    In support of her argument that Reynolds intended to amend and did amend the trust with the 2012 amendment, defendant cited "evidence at trial" consisting of a transcript of a telephone message left by Reynolds on December 14 for the attorney, seeking an appointment " 'so [Reynolds] can come in and execute this [2012 amendment], get this out of the way.' "

_____

[4]There are no transcripts of trial testimony on the record. However, defendant, in her written closing arguments, and the trial court, in its oral opinion, did reference and quote certain parts of the testimony, which we rely on.

Defendant stated that, according to the attorney's testimony at trial, "after receipt of [the December 14] telephone message, [the attorney] called Reynolds on Saturday, December 15, 2012." Defendant cited the attorney as testifying that Reynolds "already" made the amendments at that point and wanted to "bring them by" the attorney's home that day.

¶ 41 Defendant also argued that delivery was not required for a valid amendment and that the delivery provision in the amendment clause was only intended to apply to Reynolds' removal of the successor trustee. In support of her argument, defendant pointed to the fact that Reynolds wrote into the trust a provision that the trust was to remain confidential and undisclosed to "anyone, including the successor trustee(s)," until his death. Defendant also cited the attorney's testimony at trial that the delivery provision was placed in the trust to provide Reynolds with a mechanism to remove Cherie Coles as successor trustee "should the parameters of that romance change."

¶ 42 On May 7, 2013, defendant filed an emergency motion to strike certain pleadings filed by plaintiff. The motion alleged that, while the trial court received plaintiff's written closing arguments, defendant never received a copy.[5]

¶ 43 On May 9, 2013, the trial court issued its ruling. In its oral opinion, the trial court noted that the "facts are virtually uncontested" and that "there are two provisions of the Trust that are at the center of the dispute between the parties." The first provision at issue is the succession clause, and the second provision at issue is the amendment clause.

¶ 44 Since Coles passed away during Reynolds' lifetime, the trial court found that, "without a valid amendment to the Living Trust, Gerald McCarthy would be the appointed second successor trustee" under the succession clause. Thus, the trial court stated that "this case turns on" whether Reynolds properly amended the trust under the amendment clause.

¶ 45 Turning to what is required under the amendment clause, the trial court reviewed the attorney's testimony at trial. The court stated:

"[According to the attorney's testimony], the omission of any requirement in the trust instrument that any trust amendment be written, signed, notarized, or witnessed *** reflect[s] Mr. Reynolds' desire, and here's the quote [from the attorney's testimony], 'to be free and unfettered, with respect to his ability to amend the trust, should he see fit.' "

Noting that the amendment clause concludes with the phrase "or as I otherwise may direct in writing," the trial court rejected defendant's argument that there were no restrictions on Reynolds' ability to amend the trust. Therefore, the trial court found that, under the trust's amendment clause, any amendment had to be in writing.

¶ 46 However, the trial court found no other restrictions under the trust's amendment clause. In so doing, the trial court rejected plaintiff's argument that in addition to a valid amendment being in writing, an amendment also had to be (1) delivered to the successor trustee and (2) newly signed with Reynolds' signature. Concluding that delivery was not required, the court stated "it was either a misplaced comma in [the amendment clause] or the mistaken insertion of

---

[5]Although there is an email in the record corroborating that the trial court did receive a copy of plaintiff's written closing arguments, there is no copy of plaintiff's closing arguments in the record.

the power to remove the successor trustee in the same sentence regarding the power to amend or modify the trust that gave rise to this legal dispute."[6] The court continued:

> "I find it so unlikely that Mr. Reynolds meant for the second comma to be placed where it was that I rule that the first provision should be interpreted without that second comma. No notice to Cherie Coles or anyone else named as successor trustee was required before Mr. Reynolds could exercise his right amend the 2000 [*sic*] Living Trust in writing."

In concluding that a signature was not required, the trial court found that "handwritten changes are equally reliable as a signature of the person making the changes" and that in any event, the trust was "already signed by Mr. Reynolds [in 2006], making it unnecessary that he sign the changes he directed in his own handwriting."

¶ 47    Accordingly, the trial court entered judgment in favor of defendant, finding that the 2012 amendment is valid and that defendant is the rightful successor trustee. The court then dissolved the temporary restraining order.

¶ 48    On June 5, 2013, plaintiff filed a motion for reconsideration and for stay pending hearing. In the motion, plaintiff argued that the trial court was improperly "rewriting" the trust agreement when it disregarded the second comma of the amendment clause. Additionally, plaintiff argued that the trial court improperly considered the attorney's testimony that Reynolds desired "to be free and unfettered with respect to his ability to amend his trust, as he should see fit."

¶ 49    On June 14, 2013, the trial court denied plaintiff's motion to reconsider.

¶ 50                                        ANALYSIS

¶ 51    Plaintiff appeals the trial court's finding that a handwritten amendment to the trust naming defendant as the successor trustee is valid and enforceable. Plaintiff claims: (1) that during the last years of Reynolds' life and at the time of his death, plaintiff was successor trustee; and (2) that the handwritten amendment to the trust appointing defendant as successor trustee is invalid as it neither complied with the requirements of the trust's own amendment clause nor complied with the requirements for amendments under Illinois law. For the following reasons, we affirm.

¶ 52                                  I. Standard of Review

¶ 53    Plaintiff claims that we should review the trial court's decision *de novo*. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). Defendant, on the other hand, claims that we should review the trial court's decision under the "manifest weight of the evidence" standard. *Eychaner*, 202 Ill. 2d at 251 (citing *Chicago Investment Corp. v. Dolins*, 107 Ill. 2d 120, 124 (1985)).

¶ 54    To the extent that we consider the construction and legal effect of a trust document, we review a trial court's conclusions of law. *Eychaner*, 202 Ill. 2d at 252. In reviewing a trial court's conclusions of law, our standard of review is *de novo*. *Eychaner*, 202 Ill. 2d at 252

---

[6]Here, the trial court refers to the following portion of the amendment clause: "At any time during my life, I may amend or revoke this instrument *or remove the successor trustee, by written notice delivered to the successor trustee* ***." (Emphasis added.)

(citing *Norskog v. Pfiel*, 197 Ill. 2d 60, 70-71 (2001), and *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998)). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Dass v.Yale*, 2013 IL App (1st) 122520, ¶ 33 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 55 However, where a "trial court heard witness testimony and resolved conflicts of fact" and "where findings of fact depend on the credibility of witnesses, \*\*\* a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence." *Eychaner*, 202 Ill. 2d at 251 (citing *Chicago Investment Corp.*, 107 Ill. 2d at 124). "A judgment is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent." *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55 (citing *In re A.P.*, 2012 IL 113875, ¶ 17). In other words, under the manifest weight of the evidence standard, a reviewing court will overturn a trial court's findings only " 'when [the] findings appear to be unreasonable, arbitrary, or not based on evidence.' " *In re Kendale H.*, 2013 IL App (1st) 130421, ¶ 28 (quoting *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995)).

¶ 56                                    II. Principles of Construction

¶ 57 "In interpreting trusts, which are construed according to the same principles as wills, the goal is to determine the settlor's intent, which the court will effectuate if it is not contrary to law or public policy." *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574 (2009) (citing *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507, 513 (1981)). "General rules of construction of written instruments apply to the construction of trust instruments, whether they are contracts, deeds, or wills." *Storkan v. Ziska*, 406 Ill. 259, 263 (1950).

¶ 58 "When the language of the document is clear and unambiguous, a court should not modify or create new terms." *Ruby v. Ruby*, 2012 IL App (1st) 103210, ¶ 19 (citing *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 24). "However, where the language of a trust is ambiguous and the settlor's intent cannot be determined, a trial court may rely on extrinsic evidence to aid construction." *Ruby*, 2012 IL App (1st) 103210, ¶ 19 (citing *Rosen*, 2011 IL App (1st) 093533, ¶ 24). Language is ambiguous when it is reasonably susceptible to more than one meaning. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011).

¶ 59 Additionally, trusts may contain a latent ambiguity. *Koulogeorge v. Campbell*, 2012 IL App (1st) 112812, ¶ 24. "A latent ambiguity occurs where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a choice among two or more possible meanings." *Koulogeorge*, 2012 IL App (1st) 112812, ¶ 24 (citing *Hays v. Illinois Industrial Home for the Blind*, 12 Ill. 2d 625, 628 (1958)). "If a petition to construe a will or trust states facts that, if proven, show a latent ambiguity, only then will a hearing with extrinsic evidence be held to determine the possible existence of a latent ambiguity as alleged." *Koulogeorge*, 2012 IL App (1st) 112812, ¶ 24 (citing *In re Estate of Smith*, 198 Ill. App. 3d 400, 402 (1990)).

¶ 60                                      III. Succession Clause

¶ 61 Plaintiff claims that, upon the death of Cherie Coles in 2007, he became successor trustee under the terms of the trust. The succession clause of the trust provides:

"In the case of the resignation, refusal or inability to act of the successor trustee appointed to act hereunder, notice should be provided to me, if living, otherwise to the beneficiaries who shall appoint another successor trustee. If such notice is received by me *and* I am unable to then appoint a second successor trustee, I declare that Gerald McCarthy *** is hereby appointed second successor trustee. In the event that neither Cherie Coles nor Gerald McCarthy are able to serve as successor trustees *and* I am unable to then appoint an alternative second successor trustee, I appoint [my attorney] to serve in their stead." (Emphasis added.)

¶ 62    We are not persuaded by plaintiff's argument that he became successor trustee upon Cherie Coles' death. Under the plain language of the succession clause, plaintiff was to be appointed successor trustee *if* (1) Reynolds received notice that the successor trustee was unable to fulfill his or her duties, *and* (2) Reynolds was "unable to then appoint a second successor trustee." By the express terms of the document, both conditions had to occur before plaintiff became successor trustee. While the first condition was satisfied when Reynolds received notice of Coles' death, there is no evidence in the record that indicates Reynolds was unable to appoint a successor trustee before his own death. On the contrary, the 2012 amendment indicates that Reynolds intended to amend the trust to appoint defendant as successor trustee. Thus, under the plain language of the trust, plaintiff never became successor trustee, *if* the 2012 amendment appointing defendant as successor trustee is valid.

¶ 63    As a result, the trial court was correct in stating that "without valid amendment to the Living Trust [appointing defendant as successor trustee], Gerald McCarthy *would* be the appointed second successor trustee," and that "the ultimate issue here is whether the handwritten changes to the 2006 Living Trust constitute a valid amendment." (Emphasis added.)

¶ 64                    IV. Requirements of Trust Amendments

¶ 65    We next consider what constitutes a valid amendment. Under Illinois law, "[i]f a method of exercising a power to modify is described in the trust instrument, the power can be asserted only in that manner." *Whittaker v. Stables*, 339 Ill. App. 3d 943, 946 (2003) (citing *Parish v. Parish*, 29 Ill. 2d 141, 149 (1963)). In the present case, the amendment clause states:

"At any time during my life, I may amend or revoke this instrument or remove the successor trustee, by written notice delivered to the successor trustee, and if this instrument is completely revoked, all trust property held by the trustee shall be transferred and delivered in total and revert back to me as my personal and/or individual property or as I otherwise may direct in writing."

¶ 66    First, plaintiff claims that trial court improperly considered extrinsic evidence because the trust's amendment clause is unambiguous. Second, plaintiff argues that, under the plain terms of the trust and Illinois law, a valid amendment requires (1) delivery to the successor trustee; (2) a written, separate, and formal legal document; (3) a signature that is an "original[,] separate[, and] recognized marking"; and (4) "an expressed intent or a clear expression of amending." We consider each contention in turn.

¶ 67                                   A. Ambiguity and Extrinsic Evidence

¶ 68          Before we may consider what is required for a valid amendment, we must consider whether the trial court properly considered extrinsic evidence when it determined what constituted a valid amendment. Specifically, plaintiff argues that the trust unambiguously requires delivery to the successor trustee for an amendment to be valid and that, therefore, the trial court improperly considered the attorney's testimony when it held that delivery was not required for a valid amendment.

¶ 69          Indeed, courts may not consider extrinsic evidence (*i.e.*, evidence other than the language of the trust) if the language of the trust is unambiguous. *Ruby v. Ruby*, 2012 IL App (1st) 103210, ¶ 19 (citing *Rosen*, 2011 IL App (1st) 093533, ¶ 24). "General rules of construction of written instruments apply to the construction of trust instruments, whether they are contracts, deeds, or wills." *Storkan v. Ziska*, 406 Ill. 259, 263 (1950). Thus, "whether a [trust or] contract is ambiguous is a question of law," which we review *de novo. Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 154 (2004) (citing *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990)).

¶ 70          As noted, language is ambiguous when it is reasonably susceptible to more than one meaning. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). Moreover, "[w]hen interpreting a trust, a court[ ] *** examin[es] the plain and ordinary meaning of the words used in the instrument within the context of the entire document." *Ruby*, 2012 IL App (1st) 103210, ¶ 19 (citing *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 23).

¶ 71          Within the context of the entire trust document, the amendment clause is reasonably susceptible to more than one meaning. The first reasonable meaning is that delivery is required to validate an amendment. However, this meaning becomes questionable when read in light of the confidentiality provision in the final paragraph of the trust. The final paragraph states:

             "It is my further intention that this document and its contents remain confidential during my life and shall not be disclosed to anyone including the successor trustee(s) named herein and the beneficiaries; the original shall be kept in my possession and a duplicate of the original shall be maintained by [my attorney] who, upon my death, shall distribute copies to my successor trustee and the beneficiaries."

Defendant argues that, in light of Reynolds' intention to keep the document confidential and undisclosed to "anyone, including the successor trustee(s)" during his lifetime, Reynolds intended the delivery provision to apply only to the removal of the successor trustee. Defendant argues that it is incongruous for Reynolds to have intended the delivery of amendments when he also intended that the trust remain confidential for the remainder of his life. We cannot say that this reading is unreasonable. Thus, as it is reasonably susceptible to more than one meaning, the amendment clause is ambiguous. Accordingly, the trial court properly considered extrinsic evidence to determine the requirements under the amendment clause.


¶ 72                                   B. Requirements for Amendment

¶ 73          We next consider whether the trial court erred when it found that the only requirement for valid amendments in the present case is that they be "in writing." Plaintiff argues that, in addition to being in writing, the amendment clause requires valid amendments to be delivered to the successor trustee. Additionally, plaintiff argues that the trial court erred when it found

that, as a matter of law, a "writing" (1) does not need to be a separate formal legal document; (2) does not need to contain a signature; and (3) does not need to contain "an expressed[, *i.e.*, explicitly stated,] intent or a clear expression of amending." Finally, plaintiff argues that the trial court erred when it found that the formalities of prior amendments do not serve as binding models for subsequent amendments. We consider each of plaintiff's arguments in turn.

¶ 74                                                    1. Delivery

¶ 75     Plaintiff argues that, in addition to being in writing, the amendment clause requires the delivery of valid amendments to the successor trustee. As noted, the trial court considered extrinsic evidence by considering the attorney's testimony in arriving at its finding that the amendment clause does not require delivery for a valid amendment. As a result, we must "defer to the findings of the trial court unless they are against the manifest weight of the evidence." *Eychaner*, 202 Ill. 2d at 251 (citing *Chicago Investment Corp.*, 107 Ill. 2d at 124). Under the manifest weight of the evidence standard, a reviewing court will overturn a trial court's findings only " 'when [the] findings appear to be unreasonable, arbitrary, or not based on evidence.' " *In re Kendale H.*, 2013 IL App (1st) 130421, ¶ 28 (quoting *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995)).

¶ 76     We cannot say that the trial court's finding is unreasonable, arbitrary, or not based on the evidence. Reynolds' attorney testified that Reynolds wished to remain "free and unfettered" to amend the trust, and that the delivery provision was included to provide Reynolds a mechanism to remove Cherie Coles as successor trustee "should the parameters of [Reynolds'] romance [with Coles] change." There is *no* evidence in the record that indicates that Reynolds intended to require delivery for valid amendments other than the trust language itself, which we have already determined to be ambiguous. As a result, the trial court's finding that delivery is not required for a valid amendment was not against the manifest weight of the evidence.

¶ 77                                    2. Legal Requirements of "Writings"

¶ 78     The trial court found that the amendment clause requires valid amendments to be "in writing." The trial court rejected plaintiff's argument that, where an amendment clause requires that a modification be in writing, "courts will interpret such language to require that the writing contain a signature and be in the form of a [separate] 'formal legal document.' " The trial court also rejected plaintiff's argument that courts require such writings to contain "an expressed[, *i.e.*, explicitly stated,] intent or a clear expression of amending." In reviewing a trial court's conclusions of law, our standard of review is *de novo*. *Eychaner*, 202 Ill. 2d at 252 (citing *Norskog v. Pfiel*, 197 Ill. 2d 60, 70-71 (2001), and *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998)). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Dass v. Yale*, 2013 IL App (1st) 122520, ¶ 33 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)). We are not persuaded by plaintiff's arguments and the authorities he cites are distinguishable from the case at bar.

¶ 79     First, to support his argument that the writing must be in the form of a "formal legal document," plaintiff cites *Northwestern University v. McLoraine*, 108 Ill. App. 3d 310, 318 (1982). In *Northwestern*, the trust at issue required amendments to be made with " 'an instrument in writing signed *** and delivered.' " *Northwestern*, 108 Ill. App. 3d at 313. Finding that the words " 'instrument in writing' " meant a "formal legal document," the court

explicitly considered *what the decedent trustee believed* the phrase to require. In so doing, the court considered three valid amendments made over a period of 11 years that the decedent trustee had made prior to the challenged amendment. *Northwestern*, 108 Ill. App. 3d at 318-19. In other words, the *Northwestern* court did not establish a general rule that where a trust requires an amendment to be made by an "instrument in writing," that an amendment must be made by a formal, legal document. Rather, the decision in *Northwestern* considered the decedent trustee's understanding of the phrase and the decedent's past conduct to ascertain that understanding.

¶ 80    *Northwestern* also does not support plaintiff's claim that where a trust requires an amendment to be "in writing," courts will require that writing to contain a signature. Unlike *Northwestern*, the trust in the present case does not explicitly require valid amendments to contain a signature. *Northwestern*, 108 Ill. App. 3d at 313. Indeed, the *Northwestern* court based its finding that a signature was required on the express language of the trust itself. *Northwestern*, 108 Ill. App. 3d at 319.

¶ 81    Second, plaintiff argues that a valid amendment must contain an express intent to amend. In so doing, plaintiff appears to argue that an amendment must state in words that it is an "amendment," and that crossing out provisions and writing above those provisions is insufficient to express an intent to amend. He argues that without such express intent, "no reasonable person would interpret the 2012 alleged amendment as an amendment" without resorting to extrinsic evidence. To support this claim, plaintiff cites the 1938 case of *Barber v. Barber*, 368 Ill. 215, 221 (1938).

¶ 82    This argument is unpersuasive. In *Barber*, the Illinois Supreme Court considered whether a decedent testator designated a particular document as his will. *Barber*, 368 Ill. at 220. After quoting the section of the statute that outlines the requirements for wills, the supreme court stated:

> "The foregoing section *does not require any specific form of words in the drafting* of a will. An instrument in writing, irrespective of its informality, made with the expressed intent of giving a posthumous disposition to a person's property is testamentary in character, and, if duly executed, is entitled to admission to probate. [Citations.] Neither a formal attestation clause *nor even words* in addition to the signatures of the witnesses are prerequisites to a valid execution of a will. [Citations.] A clearly expressed wish of the testator in his will is equivalent to a positive direction or command. [Citation.]" (Emphases added.) *Barber*, 368 Ill. at 220-21.

While the *Barber* court did state that "[a]n instrument in writing [requires an] expressed intent," it did not prescribe how that intent must be expressed. *Barber*, 368 Ill. at 220. Indeed, the court reasoned that no "specific form of words" is required to express the intent that the document is a will. *Barber*, 368 Ill. at 220. Moreover, the *Barber* court's reasoning depended entirely on the text of a statute not applicable to trust amendments. *Barber*, 368 Ill. at 220. Even if *Barber* was applicable to the trust at bar, no specific words would be required to demonstrate that a document is a trust amendment.

¶ 83    Therefore, the trial court did not err in the case at bar when it found that a "writing" (1) does not need to be a separate formal legal document; (2) does not need to contain a signature; and (3) does not need to contain "an expressed[, *i.e.*, explicitly stated,] intent or a clear expression of amending."

¶ 84                              3. Previous Amendments as Binding Models

¶ 85        Finally, plaintiff also argues that the 2010 amendment "serves as *the* model for subsequent amendments." (Emphasis added.) In support of this claim, he cites the *Northwestern* court's consideration of the decedent trustee's prior amendments when it determined the requirements of a valid amendment. *Northwestern*, 108 Ill. App. 3d at 318-19.

¶ 86        While the *Northwestern* court did consider prior amendments in its determination of what constituted a valid amendment, the *Northwestern* court never held that prior amendments are binding models or the only evidence that trial courts may consider when determining the validity of subsequent amendments. *Northwestern*, 108 Ill. App. 3d at 318-19.

¶ 87        Accordingly, the trial court did not err when it found that the formalities of the 2010 amendment were not required for the subsequent 2012 amendment to be valid.


¶ 88                                            CONCLUSION

¶ 89        In sum, (1) under the plain language of the trust, plaintiff did not become successor trustee upon the death of Cherie Coles because Reynolds was never incapable of appointing a second successor trustee; (2) the trial court properly considered extrinsic evidence since the trust's amendment clause is ambiguous; (3) the trial court's finding that valid amendments to this particular trust need to be "in writing," but do not need to be delivered to the successor trustee was not against the manifest weight of the evidence; and (4) the trial court's finding that valid amendments "in writing" for this trust do not need to be a separate formal legal document, do not need to contain a signature, do not need to contain an "express intent" of amending, and do not necessarily need to comply with the formalities of prior amendments was not erroneous.


¶ 90        Affirmed.